**COMMONWEALTH of Kentucky, Appellant,**

v.

**Wanda COMBS, Appellee.**

No. 2009–SC–000143–DG.

Supreme Court of Kentucky.

May 20, 2010.

Rehearing Denied Aug. 26, 2010.

Jack Conway, Attorney General of Kentucky, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellant.

Barbara Anderson, F.J. Anderson, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

This case asks us to determine whether a trial court may properly instruct a jury on complicity to first-degree trafficking in a controlled substance and on first-degree trafficking in a controlled substance as the principal actor when the defendant has been formally charged with only complicity to first-degree trafficking in a controlled substance. We hold that if the evidence at trial would support a finding of guilt under both complicity and principal actor theories, the answer is yes.

## I. FACTUAL AND PROCEDURAL HISTORY.

In a controlled drug buy, an informant approached a car occupied by Wanda Combs and a passenger. The informant gave Combs money, and Combs handed the informant an oxycodone (Oxycontin) tablet. The informant was unsure if Combs ultimately gave the passenger the money or if the passenger had handed the pill to Combs to give to the informant.

Combs was indicted for one count of first-degree trafficking in a controlled substance. On Friday before trial was scheduled to begin on Monday, the Commonwealth sought to amend the indictment to charge Combs only with complicity to first-degree trafficking in a controlled substance with "Debbie Last Name Unknown...." Combs objected to the proposed amendment. On the day the trial was set to begin, the trial court held a hearing on the motion to amend, during which the Commonwealth stated that it had only recently discovered the identity of Debbie Bach, the passenger in the car with Combs during the controlled drug buy.[1]

The trial court ordered the trial to proceed and asked the Commonwealth which

---

1. The Commonwealth's belated discovery of Bach's identity is curious, at least on first impression, because the record reflects that Combs had subpoenaed Bach as a witness approximately three weeks before trial. We note that the subpoena spells Bach's surname as "Back."

indictment should be read to the jury.[2] Despite Combs's protests that she was not prepared for a trial based on a complicity theory, the trial court complied with the Commonwealth's request by reading to the jury the indictment charging guilt by complicity.

After the Commonwealth presented its case-in-chief, Combs moved for a directed verdict based upon her contention that the Commonwealth had not proven the existence and guilt of a principal actor, which Combs believed was a prerequisite for her to be convicted of guilt by complicity. The trial court denied the motion for directed verdict. Combs then called Bach and another witness to testify on Combs's behalf, but both witnesses invoked their Fifth Amendment rights and declined to testify. Combs then rested, and the Commonwealth elected not to call any rebuttal witnesses. Combs's renewed motion for a directed verdict was denied, after which a discussion of jury instructions ensued.

The Commonwealth tendered jury instructions based on both principal actor and complicity theories of guilt. Combs objected, arguing that the amended indictment charged her only under a complicity theory of guilt. Nevertheless, the trial court submitted both principal actor and complicity instructions to the jury. The jury found Combs guilty of trafficking in a controlled substance under the principal actor theory and recommended a sentence of eight years' imprisonment. The trial court sentenced Combs in accordance with the jury's recommendation, after which Combs filed a matter-of-right appeal with the Kentucky Court of Appeals.

The Court of Appeals held that it was not error for the trial court to permit the Commonwealth to amend the indictment to charge Combs with being guilty under a complicity theory. But the Court of Appeals held that Combs was "substantially prejudiced" and "was never permitted the opportunity to defend herself as a principal because she was not charged as a principal once the indictment was amended." So the Court of Appeals reversed Combs's conviction and remanded the matter to the circuit court "for a new trial."[3]

We granted the Commonwealth's motion for discretionary review in order to consider whether a trial court may instruct a jury on theories of both principal actor and complicity when the evidence would support either theory of guilt, but the defendant is formally charged only with guilt by complicity. Having fully considered the issue, we hold that dual instructions are proper under those circumstances.

## II. *ANALYSIS.*

■ As stated previously, Combs was originally indicted for first-degree trafficking in a controlled substance by "KNOWINGLY AND UNLAWFULLY SELLING OXYCONTIN, A CONTROLLED SUBSTANCE CLASSIFIED IN SCHEDULE II."[4] Before trial, the Commonwealth suc-

---

2. This question is puzzling because there was only one indictment against Combs, the only difference being whether that one-count indictment charged Combs with guilt by complicity or guilt as a principal actor.

3. Of course, an appellate court may not absolutely require a new trial to be held on remand. A new trial is among the permissible dispositions of the case after a remand to the trial court. An appellate court should merely remand a case for further proceedings consistent with its opinion.

4. *See* Kentucky Revised Statutes (KRS) 218A.1412(1) ("A person is guilty of trafficking in a controlled substance in the first degree when he knowingly and unlawfully traffics in: a controlled substance, that is classified in Schedules I or II which is a narcotic drug...."). Although it does not appear to be specifically listed in KRS 218A.070's list of Schedule II controlled

cessfully asked to amend the indictment to charge Combs with complicity to first-degree trafficking in a controlled substance "by aiding, counseling, or attempting to aid, Debbie [Bach], in selling Oxycontin...."[5]

■ This first amendment of the indictment was proper. Kentucky Rules of Criminal Procedure (RCr) 6.16 provides that an indictment may "be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." It is clear under our precedent that "amending the indictment to include an allegation that the defendant is guilty of the underlying charge by complicity does not constitute charging an additional or different offense."[6] This is true because, as we have explained, "KRS 502.020 does not create a new offense known as complicity. [O]ne who is found guilty of complicity to a crime occupies the same status as one being guilty of the principal offense."[7]

Regardless of her protests to the contrary, we conclude that Combs was not improperly prejudiced by this amendment. The essential facts of the complicity offense were the same as those underlying the principal actor offense, and Combs was already obviously aware of Bach's existence because Combs had subpoenaed Bach to testify at trial.

■ Having determined that the amendment was proper, we now turn our attention to whether the trial court properly instructed the jury on both principal and complicity theories of guilt. Although better practice would likely have been for it to seek leave of Court to do so, the Commonwealth did not seek to amend the indictment at the close of the evidence to conform to the proof.[8] So the real question

---

substances, oxycodone is specifically listed as being a Schedule II controlled substance in 902 Kentucky Administrative Regulations (KAR) 55:020 § 4(14). In fact, we have referred to oxycodone as a Schedule II substance. *Commonwealth v. Welch*, 864 S.W.2d 280, 280 (Ky.1993) ("Connie Welch was arrested on November 7, 1989, when police, while executing a warrant at the home of a suspected drug dealer, found Welch in possession of oxycodone, a Schedule II narcotic....").

5. *See* KRS 502.020(1) (providing, in relevant part, that a person is guilty of complicity to an "offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he ... (b) [a]ids, counsels, or attempts to aid such person in planning or committing the offense....").

6. *Commonwealth v. McKenzie*, 214 S.W.3d 306, 307 (Ky.2007).

7. *Parks v. Commonwealth*, 192 S.W.3d 318, 326–27 (Ky.2006) (internal citations and quotation marks omitted).

8. Such a second amendment could have charged Combs with guilt as a principal actor or guilt by acting in complicity with Bach. *Cf. Fields v. Commonwealth*, 219 S.W.3d 742, 746–47 (Ky.2007) (finding no error in amending indictment at close of evidence to reflect complicity theory of guilt). As will be discussed, however, the Commonwealth's failure to seek a second amendment of the indictment, although procedurally deficient, does not afford Combs relief. *Robards v. Commonwealth*, 419 S.W.2d 570, 573 (Ky.1967) ("The indictment could and should have been amended at the conclusion of the testimony, but it cannot reasonably be held that a failure in that respect affected the defendant's substantial rights."). As we recently held in an analogous unpublished case, an instruction permitting a jury to find a defendant guilty under an alternative theory not contained in the indictment was not a palpable error because the jury instruction "was a *de facto* or constructive amendment of the indictment, which would not be erroneous so long as the conditions for a formal amendment existed." *Evans v. Commonwealth*, No.2006–SC–000912–MR, 2009 WL 1451935, at *4 (Ky. May 21, 2009). Although the issue is better preserved in this case, we come to a similar

before us is whether the jury instructions were at variance with the proof presented at trial.

▬▬▬ "[U]nder modern rules the essential question when examining variance between the indictment and the proof is whether the defendant in fact had fair notice and a fair trial."[9] Although the Court of Appeals mistakenly seized upon this point, we have abandoned any presumption that a defendant is unduly prejudiced when an indictment is amended to charge guilt by complicity.[10] Of course, it must be borne in mind that "[t]he jury must be instructed on all theories which are deducible from the evidence."[11]

In the case at hand, since there was no definitive evidence regarding whether Bach was the principal actor or a complicitor assisting Combs, there was ample evidence from which a reasonable juror could have concluded that Combs was guilty of trafficking in a controlled substance as either a principal actor or as a complicitor with Bach.[12] The trial court acted properly by conforming the jury instructions to the proof. Although not cited by the Court of Appeals, we recently reiterated in *Pate v. Commonwealth* that our precedent

holds that "where evidence is sufficient to support a conviction as either an accomplice or as a principal, an instruction in the alternative is proper."[13] This case falls squarely within our holding in *Pate*.

And we conclude that Combs had a fair trial. Again, the operative facts were the same regardless of whether the Commonwealth's theory of the case involved complicity. In fact, Combs was ultimately convicted of the same offense and the same method of committing that offense for which she was originally indicted, trafficking in a controlled substance in the first degree under a principal actor theory.

▬▬ Combs's argument is unavailing that she was prejudiced and her trial rendered unfair by the principal actor jury instruction. First, to reiterate, trafficking in a controlled substance, like other offenses, is an offense capable of being committed as either a principal actor or as a complicitor. After all, a person who is "guilty of complicity to a crime occupies the same status as one being guilty of the principal offense."[14] So the shifting from principal actor to complicity theories of guilt and back again is not as radical a

---

conclusion because the lack of conclusive evidence regarding Bach's role in the drug transaction provided the conditions for a formal amendment of the indictment.

9. *Johnson v. Commonwealth*, 864 S.W.2d 266, 272 (Ky.1993).

10. *McKenzie*, 214 S.W.3d at 308.

11. *Commonwealth v. Duke*, 750 S.W.2d 432, 433 (Ky.1988).

12. Again, the informant testified at trial that he gave the money to Combs and received the oxycodone tablet from her. The informant testified that Combs and Bach were engaged in some sort of activity, but the informant was unsure if Combs gave Bach the money or Bach gave Combs the pill since the informant

could not see all of the interaction between Combs and Bach. But Combs admits in her brief that the video of the transaction shows the passenger (Bach) counting the money received from the informant. And the informant testified at trial that Bach and Combs seemed to confer when the informant asked if he could call a certain third person if he needed more pills. So a juror could certainly have concluded that Bach took the lead role in the drug transaction or that Bach took a role in which she merely assisted Combs. In fact, a jury could have found under these facts that both Bach and Combs were principal actors.

13. 243 S.W.3d 327, 334–35 (Ky.2007).

14. *Wilson v. Commonwealth*, 601 S.W.2d 280, 286 (Ky.1980).

change in the Commonwealth's theory of the case despite Combs's argument. We recently held in an analogous unpublished case that a trial court did not commit palpable error when it instructed a jury on both a principal actor and accomplice theory when a defendant had only been indicted under a complicity theory of guilt.[15] Although the issue in this case is better preserved, we reach the same conclusion— the defendant is not entitled to relief.

Next, Combs is unable to point to any identifiable prejudice she suffered in this case. Although a defendant should be aware beforehand whether the Commonwealth seeks to convict based upon a complicity theory alone, a principal actor theory alone, or an either-or combination theory, the fact remains that the underlying criminal offense is the same. A defendant in need of clarification of the Commonwealth's theory of guilt may file a motion for a bill of particulars.[16] Importantly, in the case at hand, the operative facts underlying both theories of guilt were the same.

Combs contends that the flip-flop in the Commonwealth's theory of guilt was prejudicial because she relied to her detriment upon her belief that the Commonwealth had failed to prove that another person committed the offense (*i.e.*, identified the principal actor) in order to convict her of guilt by complicity. Combs generically argues in her brief that if she "had received notice she was also being charged as a principal, she would have called witnesses and put on a defense to that charge." Likewise, during oral argument, Combs's counsel merely said that she could "only speculate" as to what would have been done differently at trial if she had had more notice that the Commonwealth would be seeking a jury instruction on a principal actor theory of guilt.[17]

But Combs has not detailed what new defense she would have mounted or which specific witnesses she would have called.[18] A vague claim that some unspecified evidence could have been presented to defend against a principal actor theory of guilt is insufficient to show demonstrable prejudice. As the Commonwealth astutely notes, since Combs "had prepared to defend her case as a principal until the morning of trial, it is hard to imagine what additional evidence she would have presented." Combs's claim that she was unable to present some unspecified new evidence is at odds with the fact that she did not even specifically ask the trial court to re-open the proof.[19]

---

15. *Evans*, 2009 WL 1451935 at *4–5.

16. *See* RCr 6.22.

17. At oral argument, Combs's counsel referred to "other witnesses" who could have been called if Combs had known sooner that she would be charged under both principal and complicity theories; but counsel demurred at making any specific references to these witnesses as being an improper reference to matters outside the record. Combs's counsel is correct in stating that attorneys at oral argument should refrain from discussing matters outside the record. But the only reason the specifics of this alleged additional evidence are outside the appellate record is Combs's failure to inform the trial court in detail what additional evidence Combs could present to defend the principal actor theory of guilt.

18. The only subpoena in the record was directed to Bach.

19. Combs contends that asking for a continuance is the equivalent of asking for a re opening of proof because "[w]hen a continuance is granted ... additional evidence may be introduced." To the contrary, a mere continuance only delays the proceedings; it does not necessarily change the procedural stance of the case. In other words, had a continuance alone been granted, the trial would have begun at the same precise procedural point after the continuance ended (*i.e.*, presentation of

■ The Commonwealth did present evidence sufficient for a reasonable juror to conclude that another person—Bach—was guilty of being a principal actor. Intent of course, may be inferred from the relevant circumstances.[20] And, as explained before, a reasonable juror could have, contrary to Combs' argument, found under these circumstances that Combs was guilty of complicity to trafficking in a controlled substance when Combs acted as a conduit between Bach and the informant as they exchanged the money for the Oxycontin pill. So even under a complicity theory, the Commonwealth satisfied its "burden of proving the commission of the charged offense by another person and of proving that the defendant participated in that offense."[21] A jury instruction on a complicity theory of guilt was proper.

We also reject Combs' contention that she is entitled to relief under our holding in *Wolbrecht v. Commonwealth*.[22] In *Wolbrecht*, the defendants were charged with complicity to murder; and the indictment specified that one of the defendants was the murderer. Five days into trial, the trial court permitted the indictment to be amended to charge that the murderer was an unknown person. Deeming this amendment to be a "dramatic, 180[-]degree turn in the case[,]" we reversed because the defendants "were unduly and unfairly surprised near the conclusion of the Commonwealth's case with a new charge that they

each had engaged in a conspiracy with some anonymous coconspirator...."[23]

There was no similar "dramatic, 180[-]degree turn" in the case against Combs because, as stated before, "amending the indictment to include an allegation that the defendant is guilty of the underlying charge by complicity does not constitute charging an additional or different offense."[24] The Commonwealth's theory was always that the cooperating witness handed Combs money and received Oxycontin in return. Unlike in *Wolbrecht*, no mystery offender was interjected into the case during trial.

In summary, although it is one offense, trafficking in a controlled substance can be committed as either a principal actor or as a complicitor. Combs was originally indicted as a principal actor, and the jury was instructed on that method of committing the offense. Combs's amended indictment charged her under a complicity theory of guilt, and the jury was instructed on that method of committing the offense. Both the complicity and principal actor theories of guilt were supported by the evidence. So the trial court fulfilled its obligation to instruct the jury in accordance with the evidence. Accordingly, under these facts, Combs's trial was fundamentally fair; and she was not unfairly prejudiced when the trial court instructed the jury on both principal actor and complicity theories of guilt.[25]

closing arguments). So if she really wanted to present more evidence, Combs should have asked the trial court for leave to re-open the proof.

20. *Commonwealth v. Wolford,* 4 S.W.3d 534, 539 (Ky.1999).

21. *Harper v. Commonwealth,* 43 S.W.3d 261, 265 (Ky.2001).

22. 955 S.W.2d 533 (Ky.1997).

23. *Id.* at 537.

24. *McKenzie,* 214 S.W.3d at 307.

25. The parties argue over the proper standard of review. Admittedly, our precedent on the proper standard by which we review jury instruction-related issues seems to be inconsistent. *Compare Ratliff v. Commonwealth,* 194 S.W.3d 258, 274 (Ky.2006) ("We review a trial court's rulings regarding instructions for an abuse of discretion.") *with Skaggs v. Commonwealth,* No.2007–SC–000007–MR, 2009 WL 1830807 at *4 (Ky. June 25, 2009), *citing Hamilton v. CSX Transportation, Inc.,* 208

### III. *CONCLUSION.*

For the foregoing reasons, the opinion of the Court of Appeals is reversed; and the judgment of conviction entered by the trial court is reinstated.

All sitting. All concur.

S.W.3d 272, 275 (Ky.App.2006) ("alleged errors regarding jury instructions are questions of law and must be examined using a de novo standard of review."). But we need not resolve the apparent inconsistency in this case because we would reverse the Court of Appeals and reinstate the judgment of the trial court under either standard.