**Curtis MCGRUDER, Appellant**

**v.**

**COMMONWEALTH of Kentucky, Appellee**

2014–SC–000598–MR

Supreme Court of Kentucky.

RENDERED: MAY 5, 2016

COUNSEL FOR APPELLANT: Daniel T. Goyette, Louisville Metro Public Defender of Counsel, Office of the Louisville Metro Public Defender, Advocacy Plaza, 717–719 West Jefferson Street, Louisville, Kentucky 40202, Joshua Michael Reho, Assistant Appellate Public Defender, Office of the Louisville Metro Public Defender, Advocacy Plaza, 717–719 West Jefferson Street, Louisville, Kentucky 40202

COUNSEL FOR APPELLEE: Andy Beshear, Attorney General, Matthew Robert Krygiel, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, 1024 Capital Center Drive, Frankfort, Kentucky 40601

## OPINION OF THE COURT
### BY JUSTICE NOBLE

The Appellant, Curtis McGruder, was convicted of first-degree burglary, receiving stolen property in excess of $500, and of being a second-degree persistent felony

offender. He was sentenced to twenty years in prison. On appeal, he claims that (1) he was entitled to a directed verdict of acquittal on the first-degree burglary charge, (2) the jury instructions on first-degree burglary were erroneous, and (3) the trial court erred in prohibiting his counsel from arguing a reasonable inference based on the evidence during closing arguments. Because there was insufficient evidence to sustain the first-degree burglary conviction, this Court reverses that conviction and remands.

## I. Background

In the wee hours of March 14, 2013, a neighbor witnessed a man smoking a cigarette inside a house that the neighbor knew was unoccupied at the time. (The owner of the house had purchased it in December 2012 and was in the midst of renovating it before moving in.) The neighbor called police, who arrived at the house shortly thereafter.

Upon their arrival, police surrounded the house. The suspect saw them through a window and fled to another part of the house. Despite the doors of the house being locked, police eventually gained access through a back window. They searched the mostly empty, dusty house—which had contained only various tools, building materials, and other objects consistent with an ongoing renovation project—and found Curtis McGruder hiding in the attic.

They also found in a separate part of the house a backpack, which apparently belonged to Alison Schureck and contained various items also reportedly belonging to her, including prescription pill bottles, toiletries and other personal hygiene products, a Kindle Fire tablet, jewelry, and loose change. It was later determined that the backpack and most of the items inside it had been stolen from Schureck's house the previous day.[1] In addition to the stolen items, the backpack was also found to contain McGruder's ID, a voltage meter, an open bar of soap, and a small hatchet.

McGruder was charged with first-degree burglary, receiving stolen property in excess of $500, possession of burglar's tools, and of being a second-degree persistent felony offender (PFO). The jury convicted him of first-degree burglary, receiving stolen property over $500, and of being a second-degree PFO, but acquitted him of possessing burglar's tools. The jury recommended concurrent prison sentences of ten years, PFO-enhanced to twenty years, for the burglary conviction and three years, PFO-enhanced to five years, for the receiving-stolen-property conviction. The trial court sentenced McGruder to twenty years in prison in accordance with that recommendation.

McGruder now appeals to this Court as a matter of right. See Ky. Const. § 110(2)(b). Additional facts will be developed as needed in the discussion below.

## II. Analysis

**A. Because a small hatchet does not meet the statutory definition of "deadly weapon," McGruder was entitled to a directed verdict on the first-degree burglary charge.**

McGruder first claims that he was entitled to a directed verdict on the first-degree burglary charge because there was insufficient evidence that he was "armed with ... a deadly weapon," KRS 511.020(1)(a), during the alleged burglary. Specifically, he maintains that the trial court erred in denying his motion for a directed verdict based on its finding that

---

1. Schureck testified that the value of the stolen items exceeded $500.

the small hatchet found in the backpack satisfied the statutory definition of "deadly weapon" in KRS 500.080(4).

■ When ruling on a motion for a directed verdict, a trial court "must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). It must "assume that the evidence for the Commonwealth is true, but reserv[e] to the jury questions as to the credibility and weight to be given such testimony." *Id.* A directed verdict should not be granted "[i]f the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty." *Id.* And only if the reviewing court determines "under the evidence as a whole, it would be clearly unreasonable, for a jury to find guilt," will a defendant be entitled to a directed verdict of acquittal on appeal. *Id.*

■ Kentucky's basic burglary offense is found in KRS 511.040, which makes a person guilty of third-degree burglary "when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building." KRS 511.040(1). Third-degree burglary is a Class D felony. KRS 511.040(2). The offense bumps up to second-degree burglary, a Class C felony, when the building is a "dwelling." KRS 511.030; *see also* KRS 511.010. Furthermore, regardless of whether a building or a dwelling is involved, the offense is further bumped up to first-degree burglary, a Class A felony, when one of three aggravating factors is also present. *See* KRS 511.020(1)(a)–(c). The only aggravator at issue here is whether "when in effecting entry or while in the building ... [the defendant] ... [wa]s armed with explosives or a deadly weapon." KRS 511.020(1)(a).[2] That is, we are tasked with determining whether the "small hatchet" police found when they arrested McGruder can be considered a "deadly weapon" under the statute.

■ While acknowledging that a hatchet is not explicitly included in the statutory definition, the trial court nevertheless answered that question in the affirmative by analogizing the small hatchet—it "being an object that can cut, chop, slice, dice, [and] cause great physical harm"—to a knife (which is expressly included in the statutory definition provided below). However, because the question here is one of statutory interpretation, which of course is a matter of law, we owe no deference to the trial court's interpretation. *E.g., Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002). Instead, we "must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent." *Id.*

So, to answer the question presented, we must begin with the penal code's general definitions section, KRS 500.080, which provides that a "deadly weapon" is any of the following:

(a) A weapon of mass destruction;

(b) Any weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged;

(c) Any knife, other than an ordinary pocket knife or hunting knife;

(d) Billy, nightstick, or club;

(e) Blackjack or slapjack;

(f) Nunchaku karate sticks;

(g) Shuriken or death star; or

---

2. The second aggravating factor arises when a participant in the burglary "[c]auses physical injury to any person who is not a participant in the crime," KRS 511.020(1)(b), and the third aggravator applies when they "use[] or threaten[] the use of a dangerous instrument against any person who is not a participant in the crime," KRS 511.020(1)(c).

(h) Artificial knuckles made from metal, plastic, or other similar hard material.

KRS 500.080(4). As Professors Lawson and Fortune have explained, the concept of "deadly weapon" as used in the Penal Code generally embraces "a device that is designed to be a weapon and has no other obvious usefulness." Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 9–2(a)(3), at 367 (1998). Nonetheless, while that is an apt generalization, the statute expressly lists the items that constitute deadly weapons, without relying on a general definition.

This can be contrasted with the Penal Code's related concept of "dangerous instrument," which is "any instrument, including parts of the human body when a serious physical injury is a direct result of the use of that part of the human body, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury." KRS 500.080(3). Or, stated more succinctly, it is "a device that is readily capable of causing death or serious bodily injury by the manner of its use *but without having been designed to serve that purpose.*" Lawson & Fortune, *supra,* § 9–2(a)(3), at 367 (emphasis added).

The juxtaposition of these two concepts makes clear that the primary characteristic distinguishing one from the other is the purpose or usefulness for which the particular item was designed. Deadly weapons (or, simply, weapons in general) were designed for that singular purpose: to be a weapon. Dangerous instruments, on the other hand, were not designed to be weapons, though they might be readily capable of being used as such; instead, they were designed to complete any number of non-violent tasks, such as hammering nails or chopping wood.

The distinction between the two is important when considering the Penal Code's clear intent to penalize more harshly burglaries committed when one of the aggravating factors is present, to wit, where the danger of bodily harm to victims or bystanders is increased. Burglaries committed under such aggravating circumstances are worthy of stiffer penalties than burglaries committed under less dangerous circumstances.

So, in the case of the aggravator in KRS 511.020(1)(a), the legislature deemed that simply possessing a deadly weapon in the course of a burglary sufficiently raises the dangerousness of the crime to warrant punishing it as a Class B felony. The burglary is made manifestly more dangerous, and the risk of injury to another greatly increased, if the burglar is armed with something that was designed and intended to be used as a weapon with no other apparent utility.

On the other hand, the legislature also recognized that more things than just weapons might be used by a burglar to cause bodily injury to another person. That is why they provided the alternative aggregator in subsection (1)(c) involving "dangerous instruments"—that is, again, any of a variety of implements that, while not being weapons themselves and instead having some other safe purpose or intended use, might nevertheless be used by someone as a weapon to inflict injury if so desired. A few examples that readily come to mind include a golf putter, a wrench, a paperweight, or even the typical pocket knife (which, of course, is expressly exempted from the statutory definition of "deadly weapon"). All of these were obviously designed and intended to be used for non-weapon purposes yet, in the wrong hands, can nonetheless be "weaponized," so to speak, and used to inflict substantial injury or even kill. Instruments like these

are rightly considered "dangerous" in such instances.

But accounting for the fact that the presence of instruments which might be used dangerously, in and of itself, does not necessarily make a given situation more dangerous, the statute makes only the *use* or *threatened use* of such dangerous instruments in the course of committing a burglary an aggravating factor. KRS 511.020(1)(c). This makes complete sense for the exact reason that such instruments, including the small hatchet in this case, are not weapons per se and should only be treated by the Penal Code as weapons when the offender makes use of them as such.

Based on the plain meaning of the statutes at issue and the legislative intent, then, it is clear that the small hatchet found to have been in McGruder's possession is at most a dangerous instrument, not a deadly weapon. A hatchet is not among the weapons listed in the definition of *deadly weapon*. That statutorily defined term cannot be expanded by analogy, as proposed by the trial court. The General Assembly expressly limited the types of implements that can constitute deadly weapons, and relegated others to the category of dangerous instruments, depending on their use and potential for danger.

Indeed, this case perfectly illustrates the rationale underlying the burglary statutes' varying offense levels depending on aggravating circumstances. Had McGruder, for instance, wielded the hatchet threateningly towards the police or neighbors during the burglary or even used it against them, then the dangerousness of that aggravating factor would warrant convicting him of the higher crime. But since there is no proof that he did anything of the sort, but instead merely had the hatchet—a dangerous instrument to be sure, but not a deadly weapon—in his possession at the time he was unlawfully in the building, there is no justification for the stiffer penalty because his actions did nothing to demonstrably increase the dangerousness of the crime.

Finally, the fact that our holding here is necessarily constrained by the plain meaning of the statute is why *Lyon v. Commonwealth*, 194 Ky. 570, 239 S.W. 1046 (1922), has no bearing on our decision. The Commonwealth contends that, because that case noted that "[c]ertain instruments such as ... a hatchet ... have been held as a matter of law to be deadly weapons," *id.* at 1047, it should instruct our analysis here. But the development of "deadly weapon" as a common-law term of art became largely irrelevant following the 1974 enactment of our present Penal Code, as the General Assembly thus expressly codified the meaning of the term as used in the code. It is the statutory definition, as construed according to its plain meaning, that controls, not how that term may have previously been construed.

We thus conclude that a hatchet is not a deadly weapon as a matter of law. Therefore, it would be clearly unreasonable for a jury to find that McGruder was armed with a deadly weapon while in the building solely by virtue of his having been in possession of a small hatchet at that time. As such, the trial court erred in denying his motion for a directed verdict on the first-degree burglary count and that conviction and sentence must therefore be reversed and the case remanded to the Jefferson Circuit Court, where he may be tried for a lesser degree of burglary.

We do not address McGruder's second claim of error involving the first-degree burglary jury instructions—that it was palpable error to not require the jury to separately find (1) that he was armed with the hatchet when he entered and remained in the building and (2) that the hatchet was

a deadly weapon— because our holding here renders that issue moot.

**B. The trial court did not abuse its discretion in prohibiting defense counsel from arguing that McGruder's possession of an opened bar of soap showed he did not intend to commit a crime in the building.**

■ McGruder also claims that it was error for the trial court to bar his counsel from drawing a reasonable inference during his closing argument, insisting this violated his due-process right to present a defense. We address this issue because it may arise again on remand if McGruder is retried for a lesser degree of burglary.

During his closing argument, in attempting to create a reasonable doubt as to the "intent to commit a crime" element of burglary, defense counsel stated: "Who carries around a bar of soap like this? It's harmless. A bar of soap not in the box. Maybe he was looking for a place to sleep. Maybe he was looking for a place to wash up." At that point, the trial court interjected and called counsel to the bench. There, the Commonwealth objected to defense counsel's line of argument, contending that it was improper because "none of [it] was in evidence and Mr. McGruder did not testify," and asking the judge to admonish the jury to disregard those statements. The trial court sustained the objection, finding that counsel was "offering testimony of a defense that didn't exist" and that if defense counsel "wanted to argue those things to the jury, [McGruder] has to testify to that." (McGruder did not testify in his defense.) The trial court then provided the following admonishment to the jury: "Ladies and gentlemen, I admonish you to disregard [defense counsel]'s last statements about the possible source of, the use of, the soap and what a person may have been in the property doing."

McGruder contends that in light of the bar of soap found in the backpack in McGruder's possession (and the evidence that the unoccupied house at least may have had running water at that time), it was reasonable to infer that a—if not the—reason McGruder had unlawfully entered and remained in the building was to rest and use that bar of soap to "wash up," rather than intending to commit another crime, such as theft of construction equipment. The result of this defense, he argues, would be that he could be convicted only of criminal trespass, which is the unlawful entry of a building or dwelling with no further criminal intent. *See* KRS 511.070.

On the other hand, the Commonwealth argues that because no one testified about McGruder's "habits or anything related to [him] breaking into and squatting in homes to sleep or bathe ... [or] that [he] was homeless and/or needed a place to stay," his "possession of a bar of soap ... was not sufficient for defense counsel to make this assumptive leap of logic."

■ This contention, however, "relies on the false assumption that a reasonable inference can only derive from direct evidence." *Graham v. Commonwealth*, 319 S.W.3d 331, 341 (Ky.2010). Instead, the act of drawing a reasonable inference "is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven." *Martin v. Commonwealth*, 13 S.W.3d 232, 253 (Ky. 1999). Indeed, inferring something not already proved based on proven facts necessarily contemplates reaching a conclusion derived from circumstantial evidence, such as the presence of the bar of soap in this case. One need not affirmatively testify that he intended to clean himself with a bar of soap found in his possession for a rational jury to draw a reasonable infer-

ence, based on the evidence of his possession of the soap, that he intended to wash himself with it.

Thus, as a general matter, we agree that there is nothing improper or unreasonable about arguing to the jury that it too should draw the same inference about washing up based on the evidence of the soap.

Yet McGruder's argument fails because that inference does not, in fact, provide a defense to the burglary charge (but would instead *prove* a burglary). To convict McGruder of burglary, the Commonwealth had the burden of proving beyond a reasonable doubt, among other things, that when he unlawfully entered and remained in the building, he did so with the "intent to commit a crime." *See* KRS 511.020–.040. Based on our review of the record, it is not entirely clear what evidence the Commonwealth introduced to demonstrate such intent or even what the intended crime may have been. In any event, McGruder's argument that the trial court prevented him from presenting a defense by constraining his counsel's closing argument, as explained above, is premised on the notion that a person who unlawfully enters a building intending only to use its facilities to wash up lacks the requisite "intent to commit a crime" to be guilty of burglary.

The problem is that this fails to recognize that the unauthorized use of the unlawfully entered building's bathtub or sink would itself be a crime: to wit, it involves the theft of the building owner's water, the use of which of course must be paid for by the owner.[3] Although such an offense is no doubt a petty one, likely amounting to a theft of no more than a few pennies' worth of water, it is nonetheless a criminal offense. Arguing that the reason McGruder entered was to wash up, then, actually

admits that he entered intending to commit a crime. Therefore, since the attempted inference did not actually raise a viable defense, the trial court's ruling cannot be said to have prevented him from presenting one.

### III. Conclusion

For the reasons set forth above, McGruder's first-degree burglary conviction is reversed and the case is remanded to the Jefferson Circuit Court for further proceedings consistent with this opinion. His other conviction and PFO-enhanced sentence for receiving stolen property is affirmed.

All sitting. All concur.

---

**3.** The offense may be best classified as theft of services under KRS 514.060, rather than pure theft, as "water" is a service under KRS 514.010(9).