RENDERED: DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1746-MR

D'KORIEL MARTAZE HOBSON                                        APPELLANT

APPEAL FROM DAVIESS CIRCUIT COURT
v.          HONORABLE JOSEPH W. CASTLEN, III, JUDGE
ACTION NO. 19-CR-00068

COMMONWEALTH OF KENTUCKY                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: D'Koriel Martaze Hobson ("Appellant") appeals from

a judgment of the Daviess Circuit Court reflecting a jury verdict of guilty on one

count of robbery in the first degree.[1] He argues that the circuit court erred in

failing to sustain his motion for a directed verdict. For the reasons addressed

below, we find no error and affirm the judgment on appeal.

---

[1] Kentucky Revised Statutes ("KRS") 515.020.

# FACTS AND PROCEDURAL HISTORY

Cousins Tyler Mattingly and Kayla Mattingly, then ages 19 and 22, shared an apartment in Owensboro, Kentucky. Around lunchtime on September 21, 2019, they drove to a local Sonic for something to eat and returned to their apartment. In the time it took Kayla to drive back to their apartment complex, Tyler fell asleep in the vehicle. Kayla parked next to a dumpster in the apartment complex, leaving Tyler asleep in the vehicle's passenger seat. She took a picture of Tyler sleeping and sent it to a friend of theirs, Sean, to explain why they would be late arriving for a planned meeting. Sean later responded, claiming to be feeling ill and canceling the meeting.

As she was leaving the apartment to go wake up Tyler, she opened the apartment door and was tackled to the floor, hitting her head. Her accoster was a man she did not know or recognize, but he was wearing a gray hoodie with the hood tied around his head, revealing only his face. He had a gun. He demanded that she give him everything she had. A second stranger entered her apartment and asked where Tyler was, stating that he had been told Tyler was supposed to be asleep in a car. The second man ordered Kayla to stop screaming and then told the first man to "just shoot her." The first man refused to do so.

After the second man walked through the apartment, he came back to where Kayla and the first man were located by the door. He took Kayla's cell

phones, put them outside the apartment, and told her not to move for five minutes. The first man grabbed her Xbox, which was in the process of downloading the game NBA 2K20, and they left.

Kayla did not wait five minutes as instructed, but got up, grabbed one of the cell phones, and followed the men down the stairs. She screamed at the men not to hurt Tyler.

When she arrived downstairs, she observed the second man standing at the open passenger door of her vehicle while the first man was standing by the door looking away from the vehicle, as if acting as a lookout. As she approached, the first man began running and, fearing he was coming for her, she ran back upstairs to her apartment, calling the police on her cell phone.

Tyler recognized the second man as Jaylon Hayden. Tyler did not see the man with the gray hoodie. Tyler knew Hayden because both had dated the same woman. Additionally, there was a rumor that Hayden was the biological father of the child Tyler was supporting and claiming as his own. Tyler and Hayden were not friendly. Hayden had a pointed gun at Tyler and demanded he turn over his things.

When Kayla later described the man with Hayden to Tyler, he first thought it sounded like a man named Da'Shawn. Investigation revealed that Da'Shawn had spent the afternoon of the day of the robbery playing NBA 2K20

with Sean, *i.e.*, the same person who had canceled their meeting claiming sickness after being texted the photo of Tyler asleep in the vehicle. Tyler pulled up Da'Shawn's Facebook page and showed Kayla his picture, and she believed he was the first man who had tackled her to the ground.

During the subsequent investigation, Kayla told the officer about Da'Shawn, but was instead shown a photo array in an attempt to identify the first man. Da'Shawn was not included in the array. Kayla was unable to identify him from the photos, telling police that two or three of the photos "could" be the first man involved in the robbery. With the encouragement of the police, she finally agreed that one of the photos was the robber. That photo was of Appellant.

The police were convinced Appellant was involved because he was seen on surveillance video at the scene of the crime. He was charged with two counts of robbery in the first degree, for robbing both Kayla and Tyler.

During the trial, Appellant's presence at the scene was never disputed. Rather, the defense insisted that there simply was not sufficient evidence that he was involved in the robberies, given Kayla's unsure identification and lack of any other evidence of his participation. At the close of the prosecution's case, the defense moved for a directed verdict of acquittal on both counts, which was denied. The motion was renewed after the defense declined to present any evidence.

The jury was instructed that it could find Appellant guilty either as a principal or under a complicity theory for both the robberies of Kayla and of Tyler. The jury found Appellant not guilty for the robbery of Kayla, but guilty of the robbery of Tyler. He was sentenced to serve ten years in prison, and this appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant argues that the Commonwealth failed to provide sufficient evidence to support a guilty verdict in the robbery of Tyler. As such, he contends that his motion for a directed verdict was improperly denied. Appellant notes that the evidence demonstrated that Jaylon Hayden – not Appellant – pointed a gun at Tyler Mattingly; that Tyler did not recall seeing a second robber; and, that although the video surveillance shows Appellant running from the area where Tyler was robbed, it does not show him actually robbing Tyler. Appellant goes on to argue that Kayla's testimony only demonstrates that the man in the gray hoodie, *i.e.*, Appellant, was present at or near the scene of the robbery of Tyler, but this is a fact to which Appellant openly admitted. Appellant asserts that under Kentucky law, one's mere presence at the scene of a crime is not enough to support a conviction. Appellant maintains that even an innocent person such as himself might run from the scene upon hearing a hysterical woman yelling that she was going to call the police. This is especially true, he contends, if he just witnessed a

robbery in which he was not a participant. In sum, Appellant argues that the evidence presented at trial was not sufficient to support a conviction, and that the Daviess Circuit Court erred in failing to so rule.

In *Jackson v. Virginia*, the United States Supreme Court articulated the standard of review on a motion for a directed verdict challenging the sufficiency of evidence presented.

> . . . [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial establishes guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt.
>
> . . .
>
> . . . [An appellate] court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

*Jackson v. Virginia*, 443 U.S. 307, 318, 326, 99 S. Ct. 2781, 2789, 2793, 61 L. Ed. 2d 560 (1979) (internal quotation marks and citation omitted).

The Supreme Court of Kentucky restated this standard in *Commonwealth v. Benham*, holding that:

> On motion for a directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is

sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

816 S.W.2d 186, 187 (Ky. 1991) (citation omitted).

Reasonable inferences may be drawn from circumstantial evidence. *McGruder v. Commonwealth*, 487 S.W.3d 884, 890 (Ky. 2016). "[T]he act of drawing a reasonable inference is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven." *Id.* (internal quotation marks and citation omitted). "[I]nferring something not already proved based on proven facts necessarily contemplates reaching a conclusion derived from circumstantial evidence[.]" *Id.*

In considering the record as a whole, *Benham*, *supra*, we look to the following evidence to determine if the circuit court properly denied Appellant's motion for a directed verdict: 1) Tyler testified that Hayden robbed him at gunpoint; 2) Kayla stated that she saw the other man standing at the open passenger door of her vehicle while the man with the gray hoodie was standing by

the door looking away from the vehicle, as if acting as a lookout; 3) Kayla was 100% sure that the man in the gray hoodie was Appellant; 4) Kayla saw Appellant running from the scene; 5) in examining the video, the police identified the man in the gray hoodie running from the scene as Appellant; 6) Appellant acknowledged running from the scene; 7) Appellant was observed on the surveillance video riding a yellow bicycle; and, 8) an identical yellow bicycle was found at the home of Hayden's mother.

## **CONCLUSION**

When viewing the evidence in its entirety, we conclude that it would not be clearly unreasonable for a jury to find guilt on the charge of robbery in the first degree. *Benham*, *supra*. Appellant argues that there is no direct evidence that he robbed Tyler or was complicit in the robbery, and his argument is well taken. Nevertheless, mostly circumstantial evidence was presented upon which the jury could have – and did – find Appellant guilty of being complicit in the robbery of Tyler. The most persuasive of this evidence may be Kayla's observation of the man in the gray hoodie, identified as Appellant, appearing to serve as a lookout next to the vehicle at the same time that Tyler said he was being robbed by Hayden. The jury may draw reasonable inferences from this testimony. *McGruder*, *supra*. While reserving for the jury questions as to the credibility and weight to be given to such testimony, *Benham*, *supra*, we conclude that the

Daviess Circuit Court properly denied Appellant's motion for a directed verdict. We find no error. For these reasons, we affirm the judgment of the Daviess Circuit Court.

DIXON, JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING: Respectfully, I dissent. I concur with Hobson that the trial court erred in not granting a directed verdict of acquittal. The fact that the jury acquitted Hobson of the charges he faced wherein Kayla was the victim, yet her identification of him is the sole basis for the conviction, is troubling. I agree with Hobson that the fact he was acquitted of the robbery of Kayla is relevant to his argument on appeal, but it is not determinative.

Though it was not the theory of the case for either party, the robbery of Tyler could have been committed with a different complicitor than the robbery of Kayla. The jury could have so found, so it is not sufficient to simply argue that because Hobson was found not guilty as to the robbery of Kayla that the verdict of guilt for the robbery of Tyler amounts to inconsistent verdicts and reversal is required.

However, Hobson argued that there was simply a dearth of evidence presented that he was complicit or involved in any way with the robbery of Tyler. I agree. Tyler never observed a second person during the robbery; he saw only

Hayden. While Kayla did testify that she saw someone by the car looking away from the vehicle, perhaps as a lookout, such is simply insufficient evidence of guilt. Even if she had been as sure of her identification as both the Commonwealth and the majority would make it appear, Hobson's presence at the scene is simply insufficient for a finding of his guilt. To find otherwise is to ignore decades of precedent and the constitutional requirement of guilt beyond a reasonable doubt.

Mere presence at the scene of a crime has consistently been held to be insufficient to prove a defendant guilty of that crime. *Crabtree v. Commonwealth*, 312 Ky. 738, 229 S.W.2d 752, 753 (1950). In *Moore v. Commonwealth*, 282 S.W.2d 613 (Ky. 1955), three brothers were charged with malicious shooting with intent to kill. The victim of the shooting testified that all three accused were present when he was shot, but he was uncertain as to which one shot him. The jury was given a combination instruction that they could find the defendant guilty either as a principal or an accomplice, as was done in the present case. In reversing, the Court stated:

> The rule is that a conviction is not justified by suspicion and evidence of a relationship among the accused or by their mere association at a time when a crime was committed by one of them. Mere acquiescence in, or approval of, the criminal act, without cooperation or agreement to cooperate in its commission, is not sufficient to constitute one an aider and abettor.
>
> The mere presence at the scene of a crime is not sufficient to attach guilt to the accused, but other facts

and circumstances must be shown connecting him with
the affray to justify submission of the case to the jury

282 S.W.2d at 614-15.[2]

So, I forward that Hobson's presence at the scene, as admitted at trial, is insufficient to alone establish guilt as either the principal or as a complicitor. Looking at the evidence presented, with deference to the prosecution, there are simply no "other facts and circumstances" that the Commonwealth can rely upon to connect Hobson with the crime so as to justify the conviction. Rather than provide corroboration and defend the verdict, the Commonwealth only argues that Hobson and Hayden set out for the apartment complex intent on robbing Tyler. Notably, the Commonwealth provides no citation to the record for such fact. No testimony was adduced at trial to support such contention; it is simply the surmise of the prosecution. Further, it is simply supposition that Hobson acted as the lookout at the vehicle while Hayden robbed Tyler, and again, no citation for such contention can be provided because no such fact was adduced at trial.

The salient facts are these: Kayla did not convince the jury as to the identity of the young man who tackled her to the ground at her apartment. She

---

[2] An aider and abettor is equated to an accomplice under the modern Penal Code. *See* KRS 505.020 Ky. Crime Comm'n/LRC Cmt. (1974) (quoting this language from *Moore* but substituting "accomplice").

*Robinson v. Commonwealth*, No. 2013-SC-000728-MR, 2015 WL 5634398, at *5 (Ky. Sep. 24, 2015).

testified seeing that same man, whom she could not identify, standing near her vehicle and running away when she approached. She thought it was someone named Da'Shawn when Tyler showed her the man's Facebook page, but the police never included Da'Shawn in any photo array. The police, instead, chose to focus on Hobson, as he was identified by one of the officers as being on the scene in one of the surveillance videos obtained of the parking lot. Again, mere presence at the scene of a crime is insufficient for conviction. None of the items stolen from Kayla or Taylor was found in Hobson's possession.

There simply was not sufficient evidence for a reasonable juror to have found Hobson guilty of either crime, and it was error for the trial court not to enter a directed verdict of acquittal. There was likewise insufficient evidence to support a finding of complicity, nor even enough evidence of a common plan or scheme to rob Tyler so as to allow the jury to determine the question. Again, the Commonwealth can only argue Hobson's presence at the scene as evidence of complicity. Such is simply not sufficient to meet the burden of proof beyond a reasonable doubt.

There must be adduced *some* evidence of complicity to support the giving of an instruction on a complicity theory of guilt.

> Rather, just as the defendant's state of mind may be inferred from the circumstances, we have held that circumstantial evidence of complicity may suffice. *Commonwealth v. Combs*, 316 S.W.3d 877 (Ky. 2010)

(circumstantial evidence of complicity to commit drug trafficking); *Meredith v. Commonwealth*, 164 S.W.3d 500 (Ky. 2005) (circumstantial evidence of complicity to commit robbery). This has been our law since before the Penal Code. *See Taylor v. Commonwealth*, 301 Ky. 109, 190 S.W.2d 1003, 1005 (1945) ("[T]he existence of a common purpose and the joint character of the undertaking may be inferred from all the circumstances accompanying the act.").

*Peacher v. Commonwealth*, 391 S.W.3d 821, 842 (Ky. 2013).

There was simply no evidence of complicity at all offered so that a reasonable juror could find that, beyond a reasonable doubt, Hobson assisted or aided Hayden in the robbery of Tyler. "[C]omplicity requires an *intention* to promote or facilitate commission of the offense . . . complicity requires either solicitation, conspiracy, assistance, counsel, etc." *Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky. 1993). There was simply no evidence whatsoever to support a finding that Hobson acted in complicity.

I would reverse the trial court and hold that it erred in not directing a verdict of acquittal as to the robbery charge of which Hobson was ultimately found guilty. *Deville v. Commonwealth*, 534 S.W.3d 802, 805 (Ky. App. 2017).

-13-

BRIEFS FOR APPELLANT:

John Wampler
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky