Maurice GORDON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 94–SC–279–MR.

Supreme Court of Kentucky.

Nov. 22, 1995.

Kathleen Kallaher, Pike & Scmidt Law Office, PSC, Shepherdsville, for appellant.

Chris Gorman, Attorney General, Carol C. Ullerich, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

LAMBERT, Justice.

This matter of right appeal is from appellant's conviction for one count of trafficking in a controlled substance for which he was sentenced to ten years with enhancement to twenty years upon his conviction as a persistent felony offender. Four issues have been presented and will be addressed herein.

In June, 1993, an undercover drug investigation was ongoing in Logan County. In the course of the investigation, appellant became a suspect. At the instance of the police, a paid informant, Robert Mason, sought to buy cocaine from appellant. Prior to his meeting with appellant, Mason had been "wired" with a tape recorder. As it turned out, this device essentially failed and produced a tape recording of poor quality. As such, the evidence at trial was hotly disputed. Mason testified for the Commonwealth that he had made the cocaine purchase and appellant, testifying on his own behalf, denied it. Jury assessment of the witnesses' credibility was crucial.

Appellant claims reversible error arising out of hearsay testimony given by Detective Robert Link on direct examination. The Commonwealth's first witness was Detective Link, a narcotics officer for the City of Russellville Police Department. Without objection, he testified that in the course of a county-wide investigation, he had reason to suspect appellant of drug trafficking. He was then asked how he proceeded to further investigate appellant. In response, Detective Link replied,

On June 4 we did what's called preliminary surveillance of the area around Sportman's Lounge at Fifth and Morgan, which we had had quite a bit of drug activity go on in that area. Mr. Gordon was suspected to be selling narcotics from the Fifth and Morgan Area.

Appellant, by counsel, objected on hearsay grounds and an extensive colloquy then ensued between counsel for the parties and the trial court. In essence, appellant claimed that the answer was based on hearsay statements and indeed, upon voir dire of the witness, established that the witness had relied in part on information from others including confidential informants. The Commonwealth contended that the testimony was not hearsay because it was not offered for the truth of the matter asserted; that it was only to show the course of the investigation. The trial court overruled the objection.

 As in the trial court, in this forum appellant claims error in the Link testimony. He insists that the course of the investigation had been sufficiently revealed by means of the question and answer which established that he was a suspect; that any further testimony in that vein branded him as a drug dealer and improperly bolstered the credibility of the police informant. The Commonwealth responds that the testimony was not offered for the truth of it, but to explain the Detective's conduct in arranging a controlled buy.

The issue here is discussed in Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.05 (3d ed. 1993). It is observed that in a proper case, information as to the motivation of police officers for actions they have taken may be needed to avoid misleading the jury. It is also acknowledged that receipt of such information is fraught with danger of transgressing the purpose underlying the hearsay rule. Lawson quotes from *McCormick on Evidence* 734 (3d ed. 1984) as follows

In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. Nevertheless, cases

abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.

■ In *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988), this Court affixed a tight rein upon so-called "investigative hearsay." It limited such testimony to circumstances where the taking of action by the police is an issue in the case and where it tends to explain the action that was taken as a result of the hearsay information. In such circumstances, hearsay may be admissible to prove why the police acted in a certain manner, but not to prove the facts given to the officer. In any event, however, such information is admissible only if there is an issue about the action of the police officer. *Id.* at 541. *Hughes v. Commonwealth*, Ky., 730 S.W.2d 934 (1987), articulates the reason such information must be limited:

> Appellant now stands convicted, in part at least, because of the statement of an unknown person without any showing of the reliability of the statement and without any opportunity of the appellant to cross-examine the person who allegedly implicated him in the crime. This is precisely the situation which the confrontation clauses of the Sixth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution were designed to prevent.

*Id.* at 934–35; *see also Releford v. Commonwealth*, Ky., 860 S.W.2d 770, 771 (1993).

In the case at bar, it was not improper to admit evidence that appellant had become a suspect in the county-wide drug investigation. This avoided any implication that appellant had been unfairly singled out and explained why the police equipped an informant with a recording device and money with which to attempt a drug buy from appellant. The next question, however, was utterly unnecessary and unfairly prejudicial. There was no legitimate need to say or imply that appellant was a drug dealer or that he was suspected by the police department of selling drugs in a particular vicinity. Such testimony was admittedly based in part on hearsay and was thus unassailable by appellant. Admission of this evidence branded appellant a drug dealer, violated his right to confront and cross-examine witnesses, denied his right to be tried only for the crime charged, and in general, bolstered the credibility of the police informant to the point where appellant's denial of criminal conduct would have appeared preposterous.

In view of the foregoing, the conviction must be reversed and a new trial granted.

■ Appellant's next complaint arises out of alleged misconduct by a juror. In substance, he contends that a juror who may have been prejudiced against him failed to answer truthfully on voir dire examination. We will refrain from an extensive discussion of this issue due to appellant's failure to sufficiently present it, but will comment briefly in the interest of providing judicial guidance.

■ At the outset, there was no question raised as to this juror during trial. Even assuming, for the sake of argument, that this could be overlooked due to lack of information, appellant presented only an ambiguously worded affidavit which suggested that the juror may have had knowledge he did not reveal during voir dire. Significantly, appellant did not seek to examine this juror as to what he actually knew or how he felt about appellant at the time of jury selection. In circumstances where no challenge is made to juror qualification prior to or during trial and the challenge first occurs after rendition of a verdict, a party seeking relief from the effect of the verdict bears a heavy burden. It is incumbent upon such a party to allege facts, which if proven to be true, are sufficient to undermine the integrity of the verdict. While we are prepared to grant relief in a proper case (*Paenitz v. Commonwealth*, Ky., 820 S.W.2d 480 (1991)), such will not be lightly undertaken and without a substantial basis in fact. In view of our disposition, we need not more fully explore this issue.

■ We have also considered appellant's claim concerning the paid informant's "interpretation" of the substantially inaudible tape

recording. In substance, appellant claims that the informant was improperly permitted to "interpret" the inaudible portions of the tape recording.

■ Initially the trial court determined that the tape recording was of a sufficient quality to permit its receipt into evidence. On this point the trial court was vested with broad discretion. *See generally, Woods v. Commonwealth,* Ky., 793 S.W.2d 809, 815 (1990); *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534, 540 (1988). As with any participant in a conversation, the informant witness was entitled to testify as to his recollection of what was said. In this case the tape recording was played for the jury. Thereafter, the witness gave his recollection of the salient portions of the conversation and then, upon replay of a portion of the tape, the witness was asked if he could hear it. When he answered "yes," he was then asked what he said. Unresponsively, he answered,

> Yes, I went and asked Maurice if he had any stuff. And he told me yes. And I told him I wanted a fifty dollar piece. And he gave it to me. And I said, alright, I sure thank you, Maurice.

From our examination of the transcript, it is apparent that the witness purported to interpret the tape recording rather than testify from his recollection. This was in error. Upon retrial, the court must determine whether the tape should be admitted and, of course, the witness should be permitted to testify. The court should refrain, however, from permitting the witness to interpret what is on the tape. It is for the jury to determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness. *See Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988).

■ For his final allegation of error, appellant requests that his conviction as a persistent felony offender in the second degree be reversed on grounds that the Commonwealth failed to prove that he was over the age of eighteen at the time of commission of his prior felony offense. Evidence was presented that appellant was over eighteen at the time of his prior conviction. The presentence investigation report, available only to the trial court, showed that appellant was in fact eighteen years of age at the time the prior offense was committed, as required by KRS 532.080(2)(b). However, the jury heard no evidence that appellant was eighteen or more at the time he committed the prior offense. What is also clear is a complete lack of a motion for directed verdict by appellant as to the sufficiency of proof of second degree persistent felony offender. As such, we will not consider appellant's claim of entitlement to a directed verdict due to insufficiency of the evidence. Only if necessary procedural requirements are observed will we apply the rule in *Hon v. Commonwealth,* Ky., 670 S.W.2d 851, 853 (1984). On retrial, the Commonwealth may again seek to convict appellant as a persistent felony offender. CR 50.01.

For the foregoing reasons, the judgment of the Logan Circuit Court is reversed and this case is remanded for further proceedings consistent with this opinion.

STEPHENS, C.J., and LEIBSON and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which REYNOLDS, J., joins.

FUQUA, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the Majority Opinion because I do not believe that the admission into evidence of the police detective's statement was inadmissible hearsay or reversible error.

The defendant received a fundamentally fair trial. The admission of this evidence did not violate the defendant's right to confront or cross-examine witnesses or deny his right to be tried only for the crime charged.

The testimony in question did not come within the type of investigative hearsay denounced by *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988). Here, the testimony was not offered for the truth of the matter asserted, but rather to explain the officer's conduct in arranging a controlled drug buy between Gordon and a confidential informant. Obviously, in hindsight, it may have

been more cautious for the trial judge to have admonished the jury that the statement could not be used as evidence but only to show why the police sent the informant to make the deal. However, the failure of the trial judge to go this extra step should not be considered reversible error. In any event, the failure to give this additional precautionary admonition was at the very most non-prejudicial, if any error at all. The statements of the police witness were based on his surveillance of the defendant.

In addition, I do not believe it was reversible error for the trial judge to permit an eye witness to the drug transaction to describe how that event occurred. The witness did not improperly interpret the audio tape. I agree with the Federal procedure in such cases which indicates that live testimony from an informant is the best evidence which may be supported by a recording. Where a witness has heard the statements and also testifies, the tapes give independent support to his testimony. *Cf. United States v. Davis,* 780 F.2d 838 (10th Cir.1985). In this case, Mason was available for cross-examination about any distortions in the audio tape, and there was no reversible error.

In any event, upon consideration of the entire case, there is no substantial possibility that the result would have been any different if the irregularities claimed by the Majority Opinion did occur. The errors, if any, were nonprejudicial. RCr 9.24; *Abernathy v. Commonwealth,* Ky., 439 S.W.2d 949 (1969).

I would affirm the conviction in all respects.

REYNOLDS, J., joins in this dissent.