RENDERED:  AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000891-MR

KAREEM EDWARDS                                                                    APPELLANT

v.
APPEAL FROM LYON CIRCUIT COURT
HONORABLE C.A. WOODALL, III, JUDGE
ACTION NO. 17-CR-00162

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  MAZE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Kareem Edwards ("Appellant") appeals from an order,

judgment, and sentence of the Lyon Circuit Court reflecting a jury verdict of guilty

on one count of riot in the first degree and three counts of assault in the third

degree.[1]  Appellant argues that he was entitled to a directed verdict on two counts;

---

[1] Kentucky Revised Statute ("KRS") 525.020; KRS 508.025.

that he should have received a hearing on his motion to dismiss his trial counsel; that it was palpable error to allow the Commonwealth's witness to narrate video recordings of several fights at the Kentucky State Penitentiary ("KSP"); and that he was improperly denied his right under the Sixth Amendment to the United States Constitution to a jury selected from a representative cross-section of the community. He requests an Opinion reversing his judgment and sentence, and remanding the matter for a new trial with a jury composed of a fair cross-section of the community. For the reasons addressed below, we find no error and affirm the order, judgment, and sentence on appeal.

## FACTS AND PROCEDURAL HISTORY

Appellant is an inmate at KSP. On June 29, 2017, he was one of several inmates in a large recreational area ("the yard") at KSP when several fights between inmates and corrections officers erupted. According to the record, one inmate began fighting with corrections officers which resulted in several other inmates becoming combative and/or assaulting officers in numerous locations across the yard. Appellant was watching the disturbance from a retaining wall, when he jumped down and struck Lieutenant Anthony Hale in the face with a closed fist. Appellant continued attacking Hale after Hale fell to the ground. Hale briefly lost consciousness and suffered broken teeth.

Sergeant Melvin O'Dell then attempted to control and remove Appellant from the yard, resulting in Appellant kicking O'Dell in the legs. After Appellant was placed in handcuffs, he refused to comply with instructions and officers had to drag him. When officers attempted to place Appellant in a restraining chair, Appellant used his elbow to strike Officer Brian Neely in the eye and ribs.

On December 5, 2017, a grand jury charged Appellant with one count of riot in the first degree, two counts of assault in the third degree, one count of assault in the second degree, and with being a persistent felony offender.[2] The matter proceeded to a jury trial on the amended charges of one count of riot in the first degree and three counts of assault in the third degree. The jury returned a guilty verdict on each count, and the circuit court imposed the recommended sentence of 17 years in prison to run consecutively to his underlying murder sentence. This appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant first argues that the Lyon Circuit Court committed reversible error in failing to render a directed verdict on the charges of riot in the first degree and assault in the third degree as to Sergeant O'Dell. He contends that distinct, separate disturbances occurred at different times and at different locations

---

[2] KRS 508.020; KRS 532.080.

throughout the KSP yard, and were not sufficient to establish that a riot occurred

nor that Appellant knowingly participated in it. Appellant asserts that while five

other inmates were also charged with various crimes resulting from the melee,

those individuals were involved in similar but unrelated disturbances which cannot

reasonably be characterized as a riot. Appellant directs our attention to the

commentary of KRS 525.020, which emphasizes that the actor must "knowingly"

participate in a riot, and that it is not sufficient to merely demonstrate that

numerous individuals engaged in similar but unrelated activities.

KRS 525.020(1) states that "[a] person is guilty of riot in the first

degree when: (a) He knowingly participates in a riot; and (b) In the course of and

as a result of such riot a person other than one (1) of the participants suffers

physical injury or substantial property damage occurs."

The standard of review on a motion for a directed verdict was set forth

in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991), in which the Kentucky

Supreme Court stated:

> On motion for directed verdict, the
> trial court must draw all fair and reasonable
> inferences from the evidence in favor of the
> Commonwealth. If the evidence is
> sufficient to induce a reasonable juror to
> believe beyond a reasonable doubt that the
> defendant is guilty, a directed verdict should
> not be given. For the purpose of ruling on
> the motion, the trial court must assume that
> the evidence for the Commonwealth is true,

> but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

Id. at 187 (citation omitted). The prosecution must produce more than a "mere scintilla of evidence" regarding the defendant's guilt. *Id.* at 188. However, "[t]he testimony of even a single witness is sufficient to support a finding of guilt, even when other witnesses testified to the contrary if, after consideration of all of the evidence, the finder of fact assigns greater weight to that evidence." *Commonwealth v. Suttles*, 80 S.W.3d 424, 426 (Ky. 2002) (citation omitted).

Pursuant to *Benham*, *supra*, we must first determine whether, under the evidence as a whole, it would have been clearly unreasonable for a jury to find guilt on the charge of riot in the first degree. Having closely studied the record and the law, we must answer this question in the negative. Evidence was adduced that Appellant jumped down from a retaining wall and repeatedly struck Lieutenant Hale with a closed fist causing physical injury. Further, the record reveals that Appellant was one of six inmates who fought with corrections officers in the yard at the same time or about the same time. There is no evidence that these attacks were synchronized or coordinated, but rather were "reactive" according to KSP Internal Affairs Coordinator James Beaver. KRS 525.020(1), however, does not

-5-

require simultaneity or coordination. Rather, the General Assembly defined "riot" for purposes of KRS Chapter 525 as "a public disturbance involving an assemblage of five (5) or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs law enforcement or other government function." KRS 525.010(5).

The Kentucky Supreme Court has characterized fighting between inmates and corrections officers as a "riot" for purposes of KRS Chapter 525. In *Commonwealth v. Cook*, 739 S.W.2d 541 (Ky. 1987), for example, the Kentucky Supreme Court determined that fighting between inmates which spilled over into fighting with guards constituted a riot, and supported the conviction of Northpoint Training Center inmate Floyd Cook on charges of both assault in the second degree and riot in the first degree. We conclude from KRS 525.010(5), KRS 525.020(1), and *Cook* that the Commonwealth produced "more than a mere scintilla" of evidence that Appellant violated KRS 525.020(1), and that, under the evidence as a whole, it was not clearly unreasonable for the jury to find guilt. *Benham*, 816 S.W.2d at 187-88. Accordingly, Appellant was not entitled to a directed verdict on this issue and the Lyon Circuit Court properly so found.

In his related argument, Appellant maintains that he was entitled to a directed verdict on the charge of assaulting Sergeant O'Dell. While he admits that he kicked O'Dell, he notes that O'Dell testified that no injury resulted from the

kick. As such, he argues that he was improperly convicted of assault in the third degree as to Sergeant O'Dell.

KRS 508.025(1) states in relevant part that a person is guilty of assault in the third degree when he intentionally causes or attempts to cause physical injury to an employee of a detention facility. KRS 508.025(1)(a)2. As Appellant is appealing from the denial of his motion for a directed verdict, we again must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth, and determine under the evidence as a whole whether it was clearly unreasonable for the jury to find guilt. It is uncontested that O'Dell is an employee of a detention facility, and Appellant acknowledges kicking O'Dell during the course of a physical altercation. When construing the evidence in favor of the Commonwealth and drawing all fair and reasonable inferences therefrom, we cannot conclude that it was clearly unreasonable for the jury to find that Appellant attempted to injure O'Dell. As such, a directed verdict was not warranted and we find no error.

Appellant next argues that he was improperly denied a hearing on his motion to dismiss his trial counsel. In January 2019, Appellant filed a *pro se* motion to compel his appointed trial counsel to produce her work file. In April 2019, and about a month before trial, Appellant then filed a *pro se* motion to dismiss his trial counsel. In support of the motion, Appellant alleged that he had

been denied "medical reports, camera footage, police reports, photos, tape recordings, witness statements, etc.," and that his appointed counsel had otherwise failed to communicate with him. He also asserted a conflict of interest. On April 17, 2019, the circuit court denied Appellant's motions upon finding that Appellant had no constitutional right to choose his appointed counsel, that he had failed to demonstrate a conflict of interest, and that he had otherwise failed to demonstrate a good cause to justify replacing his counsel. Appellant responded by filing a *pro se* notice of interlocutory appeal on May 30, 2019, which the court tabled, and a *pro se* motion on May 9, 2019, seeking a temporary injunction to halt the proceedings. The court denied this motion.

On the day of trial, Appellant stated to the court that he had not received from counsel the full discovery, video recordings, or other exculpatory evidence. After complaining that counsel had not informed him of her trial strategy, Appellant acknowledged that he had refused to meet with his trial counsel one week prior because one or two hours was not a sufficient time to develop a serious trial strategy. After further discussions with Appellant, his trial counsel, and the Commonwealth, the circuit court found no conflict of interest and no grounds for discharging his counsel. These conclusions were later memorialized in the May 20, 2019 Final Jury Trial Order, Judgment and Sentence now on appeal. Appellant, through counsel, now argues that the short exchange the morning of

trial between himself, appointed counsel, the Commonwealth, and Judge Woodall was wholly inadequate to address his concerns. He seeks an opinion reversing and remanding the matter for a hearing.

Appellant acknowledges that there is no explicit requirement that a hearing be conducted on a motion to dismiss trial counsel. He directs our attention to the unpublished Opinion of *Garren v. Commonwealth*, No. 2019-CA-000027-MR, 2019 WL 5681185 (Ky. App. Nov. 1, 2019), however, for the proposition that there is an implied entitlement to a hearing. *Garren* cites *Deno v. Commonwealth*, 177 S.W.3d 753 (Ky. 2005), which held that the procedure to address a motion to dismiss counsel: 1) allows the movant to fully describe his objection to counsel; 2) if the stated objection is not frivolous, counsel is allowed to respond; and 3) the court questions the movant and counsel regarding the specific allegations. We do not conclude from *Deno* that a movant is entitled to a full hearing on a motion to dismiss counsel. Rather, *Deno* requires that the court consider the movant's objection and counsel's response, and then render a decision.

In the matter before us, Appellant fully described in open court his objections to counsel. Counsel responded that she had formulated a trial strategy, was ready to proceed, had produced all relevant documents for Appellant, and that Appellant refused to meet with her at the detention facility. Appellant, trial counsel, and the Commonwealth discussed the matter with Judge Woodall after

which the circuit court denied the motion. Appellant was availed of the basic procedure outlined in *Deno*, his complaints about counsel's representation were either refuted by the record or were otherwise non-persuasive, and we find no error.

Appellant's next argument is that palpable error occurred when the Commonwealth's witness was allowed to narrate to the jury the video recordings of the disturbances at KSP. Specifically, Appellant objects to the testimony of KSP Internal Affairs Supervisor James Beavers, in which Beavers described what was occurring when several videos of the disturbance were shown to the jury. Appellant cites Kentucky Rule of Evidence ("KRE") 602 for the rule limiting lay opinion testimony to matters of which the witness has personal knowledge, and cites *Gordon v. Commonwealth*, 916 S.W.2d 176, 180 (Ky. 1995), for the proposition that the jury must determine what is revealed in a video recording without embellishment by a witness. The corpus of his argument is that Beavers improperly narrated and commented upon the video recordings which depicted events of which he had no personal knowledge or recollection. He asserts that without Beavers' improper commentary, the Commonwealth would have failed to establish an essential element of the riot. He seeks a reversal and remand for a new trial arising from this error.

-10-

This issue was not raised below and is not ripe for appellate review. As such, we may review it only for palpable error. *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). "A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." Kentucky Rule of Criminal Procedure ("RCr") 10.26. "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin*, 207 S.W.3d at 5.

The question for our consideration, then, is whether Internal Affairs Supervisor Beavers' narration of the videos was a defect so manifest, fundamental, and unambiguous that it threatened the integrity of the judicial process. We find no such defect. Manifest injustice has been found, for example, when the Commonwealth and the trial judge agreed to "send a message" by sentencing a defendant far in excess of the statutory maximum penalty. *Martin v. Commonwealth*, 456 S.W.3d 1, 12 (Ky. 2015). Manifest injustice has also been found when identical jury instructions for separate offenses potentially deprived the defendant of his right to a unanimous verdict and to challenge the sufficiency of the evidence on appeal. *Miller v. Commonwealth*, 283 S.W.3d 690, 695-96 (Ky.

2009).  Beavers' narration of the videos did not threaten the integrity of the judicial process as in *Martin* and *Miller*, and, accordingly, we find no basis for reversing the judgment of conviction on this issue.

Appellant's final argument is that the Lyon Circuit Court violated his Sixth Amendment right to a jury selected from a representative cross-section of the community.  At the close of *voir dire*, Appellant's counsel made a motion noting that there were no non-white persons on the jury and asking if additional African American jurors could be included from the district court jury pool.  The court responded that only about 5% of Lyon County residents were non-white, and that according to the latest census most of that 5% was a result of KSP being located in the county.  The court denied Appellant's request upon concluding that, "[a]s a result, we do not have many black people or non-white people, very few, on any jury panel here in Lyon County."  Appellant argues that the circuit court's acknowledgement that there are few African Americans in Lyon County is tantamount to the improper systemic exclusion of a distinctive group of persons and is violative of the Sixth Amendment.

In order to succeed on a motion to dismiss a venire, the movant must demonstrate that:  1) a distinctive group in the community is excluded; 2) the representation of the group compared to the representation in the community is not fair and reasonable; and 3) the underrepresentation is due to systemic exclusion of

-12-

the group in the jury selection process. *Miller v. Commonwealth*, 394 S.W.3d 402, 409 (Ky. 2011). Appellant has not proven any of these elements. Nothing in the record demonstrates that African Americans or other non-whites in the community were excluded from the jury pool or petit jury. Further, Appellant has not shown any unfair or unreasonable representation, nor that any purported underrepresentation was the result of systemic exclusion. Appellant has not met his burden on this issue, and the Lyon Circuit Court properly so found.

## **CONCLUSION**

Appellant was not entitled to a directed verdict on the charges of riot in the first degree or assault in the third degree. He received full consideration of his motion to dismiss counsel, and did not show palpable error arising from the narration of the videos shown to the jury. Finally, Appellant's Sixth Amendment right to a representative jury was not infringed. For these reasons, we affirm the Final Jury Trial Order, Judgment and Sentence of the Lyon Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven Nathan Goens
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Emily Bedelle Lucas
Assistant Attorney General
Frankfort, Kentucky