# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JANUARY 21,2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0582-MR

ROBERT JAMIESON                                          APPELLANT

ON APPEAL FROM HARDIN CIRCUIT COURT
V.                     HONORABLE KELLY M. EASTON, JUDGE
NO. 18-CR-00049

COMMONWEALTH OF KENTUCKY                      APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Robert Patrick Jamieson appeals as a matter of right[1] his conviction by a Hardin County jury of first-degree sodomy, first-degree incest, and first-degree sexual abuse of H.J.,[2] his granddaughter. Jamieson appeals the trial court's jury instructions regarding the charges of first-degree sodomy (single act) and first-degree incest (single act) as violating his right to a unanimous verdict. Jamieson also alleges the trial court erred when it permitted a police detective to improperly bolster H.J.'s testimony. Having reviewed the record and the parties' arguments, we hereby affirm the judgment of the Hardin Circuit Court.

---

[1] KY. CONST. § 110(2)(b).

[2] To protect her privacy, we will use the initials of the minor victim to identify her.

# I. BACKGROUND

H.J. was born on May 7, 2006, to Jamieson's daughter, a struggling drug addict, and a non-participating father. Jamieson and his longtime girlfriend Lorrie took responsibility for H.J. and, in 2007, were granted legal custody. When H.J. was six, Jamieson and Lorrie's relationship ended. Lorrie continued as H.J.'s primary guardian, but Jamieson had visitation every other weekend.[3] This arrangement continued for approximately six years, until January 2018, when H.J. told Lorrie that Jamieson had been inappropriately touching her since May 2017.

Lorrie contacted the Kentucky State Police to report H.J.'s allegation. Detective Borders was assigned to the case, and authorities set up a forensic interview with H.J. conducted by Silverleaf Sexual Trauma Recovery Services. Detective Borders did not participate in the interview but observed it. During the interview, H.J. provided details of Jamieson's actions. These details included the location of pornographic material and sex toys used by Jamieson on H.J. and that Jamieson had her perform oral sex on him at least once while seated in his recliner. Based on the interview, Detective Borders obtained a search warrant for Jamieson's residence. Officers executed the search warrant and retrieved two vibrators and pornographic magazines from locations identified by H.J. Various items collected were tested by the Kentucky State Police Laboratory. One of the vibrators was found to have H.J.'s DNA on it. A

---

[3] There is no record of a formal custody adjudication upon the dissolution of Lorrie and Jamieson's relationship.

grand jury indicted Jamieson on charges of rape in the first degree, victim under twelve, in a continuing course of conduct; sodomy in the first degree, victim under twelve, in a continuing course of conduct; incest in the first degree, victim under twelve, in a continuing course of conduct; sexual abuse in the first degree, victim under twelve, in a continuing course of conduct; and terroristic threatening in the third degree.

At trial, H.J. testified the abuse began on her eleventh birthday when Jamieson took her into his bedroom and had her undress before touching her. H.J. stated Jamieson told her he would kill her or himself if she told anyone of the incidents. Over the next seven months, the abuse progressed. H.J. stated Jamieson forced her to perform oral sex on him once or twice while he sat in a recliner. In other incidents, Jamison used a vibrator on her and viewed pornography with her. H.J. testified that while the oral sex and penetration by the vibrator each happened once or twice, the touching occurred every time she visited Jamieson.

After H.J.'s testimony, the Commonwealth called Detective Borders to the stand. During his testimony, the Commonwealth introduced physical evidence collected by Detective Borders and other KSP officers during the search. Included in the evidence was a vibrator found in the right-side bedroom nightstand, pornography found in the left-side bedroom nightstand, and fabric samples from the recliner. The vibrator was found to have H.J.'s DNA on it. When asked by the Commonwealth why he searched those areas and chose to collect a sample from the recliner, Detective Borders referenced the statements

H.J. made to Silverleaf during the forensic interview. Counsel for Jamieson objected to Detective Borders's statements as impermissible hearsay. The trial court overruled the objection stating that the statements were permitted to the extent they explained why Detective Borders acted as he did. The trial court provided a limiting instruction to the jury explaining the permissible use of the statements during Detective Borders's testimony and again during jury instructions before closing arguments.

At the close of the trial, the trial court, over Jamieson's objection, provided the jury with both a continuing course of conduct instruction for each sexual offense and an alternate single-act instruction for each sexual offense. The jury deliberated for five hours and found Jamieson guilty of three charges: sodomy in the first degree, victim under twelve (single act); incest in the first degree, victim under twelve (single act), and sexual abuse in the first degree, victim under twelve, in a continuing course of conduct. This appeal followed.

## II. ANALYSIS

Jamieson asserts the trial court committed two errors justifying that the convictions be vacated. First, he argues that the instructions to the jury regarding sodomy, first degree (single act) and incest, first degree (single act) were deficient and resulted in a non-unanimous verdict. Second, Jamieson asserts the trial court erred in permitting Detective Borders to improperly bolster H.J.'s testimony.

4

**A.    The Jury Instructions Properly Avoided a Unanimous Verdict Error.**

Jamieson takes issue with the trial court's instructions as to the single

acts of sodomy and incest. The trial court's sodomy instruction was as follows:

> If you do not find the Defendant guilty under Instruction No. 6
> [Sodomy, continuing course of conduct], you will find the
> Defendant guilty of First-Degree Sodomy under this Instruction if,
> and only if, you believe from the evidence beyond a reasonable
> doubt all of the following:
>
> A. That in this county before the finding of the Indictment herein
>    and between May 7, 2017, and December 31, 2017, he engaged
>    in a single act of deviate sexual intercourse with [H.J] with the
>    jury in unanimous agreement on the single act occurring during
>    that time frame;
>
> AND
>
> B. That at the time of such intercourse [H.J.] was less then twelve
>    years old.

The incest instruction stated:

> If you do not find the Defendant guilty under Instruction No. 8
> [Incest, continuing course of conduct], you will find the Defendant
> guilty of Incest under this Instruction if, and only if, you believe
> from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county before the finding of the Indictment herein
>    and between May 7, 2017, and December 31, 2017, he engaged
>    in a single act of sexual intercourse or deviate sexual
>    intercourse with [H.J] with the jury in unanimous agreement on
>    the single act occurring during that time frame;
>
> AND
>
> B. That [H.J.] was his granddaughter;
>
> C. That he knew [H.J.] was his granddaughter;
>
> D. That at the time of such intercourse [H.J.] was less then twelve
>    years old.

This Court has identified two forms of "unanimous verdict violations."[4] The first, not at issue here, can occur when multiple counts of the same offense are adjudicated in a single trial.[5] The second form occurs "when a jury instruction may be satisfied by multiple criminal acts by the defendant."[6] This second form of unanimous verdict error is one of duplicitous instructions failing to guarantee that all jurors agree as to the specific act constituting the offense.[7] Jamieson asserts the trial court erred by issuing an instruction that permitted the second form of unanimous verdict violation.

In *King v. Commonwealth,* the prosecution presented evidence of multiple acts of sexual abuse, and the relevant jury instruction allowed for a finding of guilt based on any of the multiple, separate acts of sexual abuse mentioned in the evidence.[8] Furthermore, the jury instruction contained no specific direction to the jury emphasizing to them they must unanimously agree on a particular act.[9] Therefore, we held that there was no way to determine that all twelve jurors agreed upon the criminal act for which they convicted King.[10] We identified three ways a trial court can avoid a duplicitous instruction issue:

> (1) the jury instruction can simply identify which of the particular criminal acts included in the evidence the jury is asked to

---

[4] *Martin v. Commonwealth,* 456 S.W.3d 1, 6 (Ky. 2015).

[5] *Id.*

[6] *Id.* at 7.

[7] *King v. Commonwealth,* 554 S.W.3d 343, 351 (Ky. 2018) (citing *Jenkins v. Commonwealth,* 496 S.W.3d 435, 448 (Ky. 2016)).

[8] *Id.* at 352.

[9] *Id.*

[10] *Id.*

consider; (2) the verdict form can identify the particular act upon which the jury determined guilt; or (3) a special instruction, as held by some courts, informing the jury that, in order to convict, all twelve jurors must agree that the defendant committed the same act.[11]

The trial court in Jamieson's case chose the third method with its instructions.

Jamieson alleges, despite the special instruction, the trial court's error is evident based on the court's own statements during the discussion of the instructions. In explaining the selected form of jury instruction as to the single-act counts of rape, sodomy, and incest, the court stated:

> [n]ow what I did do in there, so you all will both know. You'll notice how I worded that. You're going to have a unanimous verdict problem if you don't say to them "you all have to agree on a single act; all twelve have to believe that the act occurred during that time frame that time." So that's why it's worded that way.

Jamieson argues this amounted to a "command" by the trial court imposing a duty upon the parties to clarify any ambiguity brought on by the instruction. We find this to be a serious misunderstanding of the exchange. When the full record of the jury instruction discussion is reviewed, it is manifestly apparent the trial court was not placing a duty upon the parties to clarify which act related to the single count. Instead, the trial court explained to the parties its reasoning in selecting the third method of avoiding a duplicitous instruction, the special instruction.

Jamieson argues the instruction should have been tailored to a specific factual scenario and that we cannot assume a unanimous verdict without such

---

[11] *Id.* at 353.

tailoring. We disagree. The trial judge's inclusion of, at the end of each instruction, a statement that the jury must be "in unanimous agreement on the single act occurring during that time frame[,]" was a special instruction meeting the requirement identified in *King.* A jury is presumed to follow a trial court's instructions[12] and the jury was instructed as to the need for unanimity regarding the act constituting the offense. For this reason, we find the jury instructions for sodomy and incest were not duplicitous.

### B.      Detective Borders's Testimony Did Not Impermissibly Bolster H.J.'s Testimony.

Jamieson argues that Detective Borders's testimony injected impermissible hearsay from the forensic interview in an attempt to bolster H.J.'s testimony. At issue are two parts of Detective Borders's testimony during which he repeated statements H.J. made during her forensic interview. First, to explain his search of the nightstands in the bedroom, Detective Borders testified about where H.J. said the sex toy and pornography were located. Second, Detective Borders testified about statements H.J. made about a trash can located near a recliner where the oral sex took place. H.J. had testified to these facts during her direct examination, and defense counsel objected to Detective Borders's recitation of these statements because, defense counsel contended, H.J. was never impeached during cross-examination, making

---

[12] *See Dixon v. Commonwealth*, 263 S.W.3d 583, 593 (Ky. 2008); *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006); *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003); *Scobee v. Donahue*, 164 S.W.2d 947 (Ky. 1942).

8

Detective Borders's statements bolstering not within the exception of KRE[13] 801A.

The trial court found the statements were admissible, not for the purpose of establishing their truth, but explaining Detective Borders's investigative actions. During Detective Borders's testimony concerning the search of Jamieson's home, he was asked about how he located the sex toys, pornography, and his choice as to what items near the recliner to send off to the police laboratory. In explaining his investigative thought process, he mentioned H.J.'s statements about these items during the forensic interview.

A police officer may testify to information furnished to him for purposes of explaining the actions taken as a result of the information.[14] Such testimony is limited to explaining an officer's actions and is not admissible to prove the facts provided to the officer.[15] In *Chestnut v. Commonwealth*, officers arrested Chestnut as the perpetrator of a series of burglaries based on an identification at the scene by one of the victims.[16] This Court held the officer's testimony regarding the identification at the scene was not hearsay because the

---

[13] Kentucky Rules of Evidence.

[14] *Chestnut v. Commonwealth*, 250 S.W.3d 288, 294 (Ky. 2008) (citing *Sanborn v. Commonwealth*, 754 S.W.2d 534, 541 (Ky. 1988)); *see also Kerr v. Commonwealth*, 400 S.W.3d 250, 257 (Ky. 2013) ("Extrajudicial statements to a police officer are inadmissible hearsay **unless** offered to explain the basis for the action later taken by the police officer.") (emphasis added).

[15] *Id.* (citing *Gordon v. Commonwealth*, 916 S.W.2d 176, 179 (Ky. 1995).

[16] *Id.*

statement was not offered as proof that the identification was correct but only to explain the officer's motive for arresting Chestnut.[17]

All three facts mentioned by Detective Borders were previously testified to by H.J. Their relevance to Detective Borders's testimony was to explain why he searched certain places and why particular items were sent off to the laboratory for processing. Furthermore, the trial court admonished the jury at least twice that Detective Borders was not testifying to the truth of the underlying statements, only as to how the statements influenced his actions and the course of the investigation.

Even if Detective Borders's testimony was offered as support of H.J.'s testimony, such bolstering would have been permissible under KRE 801A(a)(2) due to the defense counsel's impeachment of H.J. on cross-examination. Prior consistent statements of a witness are admissible when offered to rebut an express or implied charge against that witness of recent fabrication, improper influence, or motive.[18] This exception generally applies only if the prior statement predated the motive for the recent alleged fabrication, improper influence, or motivation.[19] At the start of H.J.'s cross-examination, the defense counsel asked H.J. a series of questions that permitted the bolstering testimony. The questions generally inquired into whether H.J. had met with the Commonwealth's Attorney prior to her testimony, whether she had read

---

[17] *Id.* at 294-95.

[18] KRE 801A(a)(2).

[19] *See Smith v. Commonwealth*, 920 S.W.2d 514, 517 (Ky. 1995); *Tome v. United States*, 513 U.S. 150 (1995).

10

Trooper Ellis's or Detective Borders's reports, and whether she had spoken with Lorrie about her testimony prior to that day. H.J. answered that she had not discussed her testimony with Lorrie, as the events were a topic they avoided. As to discussions with the Commonwealth's Attorney, H.J. acknowledged meeting with the Commonwealth's Attorney in preparation for her testimony. H.J. further acknowledged that while she had not actually read the officers' reports, portions of them were read to her by the Commonwealth's Attorney.

The questioning, while careful and not overly combative, was obviously to induce the jury to infer that H.J.'s testimony was not entirely her own recollection. Rather, the defense was intimating that the testimony was influenced, either intentionally or unintentionally, by the Commonwealth's Attorney, police officers, or Lorrie. Any undue influence attributed to Lorrie arguably predated the statements made at the forensic interview rendering it outside the KRE 810A(a)(2) exception. However, any inference that the Commonwealth's Attorney or police officers influenced H.J.'s testimony would have had to occur between the date of the forensic interview and her testimony and falls squarely within KRE 801A's exception. Any doubt as to the inference the defense was asking the jury to draw was clarified at closing when defense counsel specifically questioned H.J.'s recollection or fabrication of the events in question. We conclude Detective Borders's testimony served to refute defense counsel's inference that the Commonwealth's Attorney or police officers coached H.J. As such, the trial court did not err in its admission.

11

### III. CONCLUSION

For the reasons set forth above, we hereby affirm the Hardin Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Adam Meyer
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General