# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: MARCH 23, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0059-MR

ANGELA WAUGH                                                     APPELLANT

ON APPEAL FROM GREENUP CIRCUIT COURT
V.            HONORABLE BRIAN CHRISTOPHER MCCLOUD, JUDGE
NO. 19-CR-00101

COMMONWEALTH OF KENTUCKY                             APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Angela Waugh appeals as a matter of right[1] from a judgment of the Greenup Circuit Court convicting her of first-degree sodomy; incest; complicity to first-degree rape; two counts of complicity to first-degree sodomy; complicity to attempted first-degree sodomy; complicity to first-degree sexual abuse; use of a minor in a sexual performance; and fourth-degree assault. She received a total sentence of forty years' imprisonment. Waugh raises three claims of error: (1) her convictions for complicity to first-degree sodomy and complicity to attempted first-degree sodomy violated the prohibition against double jeopardy; (2) there was insufficient evidence to support the conviction for

---

[1] Ky. Const. § 110(2)(b).

complicity to first-degree sodomy; and (3) the trial court improperly allowed the Commonwealth to interpret the contents of a recorded telephone call between Waugh and her mother. Discerning no error, we affirm.

Waugh resided with her 14-year-old daughter, H.W., her two sons, and Waugh's boyfriend, Kevin Bowling, in a house owned by Waugh's mother, Gayle Waugh. Waugh and Bowling kept their bedroom in the garage. H.W. spent a lot of time socializing with Waugh and Bowling in the garage. Waugh and Bowling provided H.W. with marijuana, prescription pain pills, and alcohol. Over time, Waugh and Bowling engaged in increasingly sexually charged conversations with H.W. Waugh and Bowling told H.W. that they wanted her to watch them have sex and that they wanted to set up video cameras to watch H.W. have sex with boys.

In January 2019, H.W. fell asleep in the garage while waiting for Waugh and Bowling to return. Upon their arrival, the three smoked marijuana, snorted pills, and drank alcohol. H.W. became so intoxicated that she lost consciousness. As H.W. drifted in and out of consciousness, she awoke with no clothes on. Waugh's mouth was on H.W.'s vagina and she was placing her fingers in H.W.'s vagina. Bowling also placed his mouth on H.W.'s vagina while Waugh again placed her fingers inside H.W.'s vagina. Bowling later had sexual intercourse with H.W. while she was bent over the arm of the couch. Waugh told H.W. to arch her back. H.W. could not move or speak and continued to drift in and out of consciousness. When H.W. awoke, Bowling was again having sexual intercourse with her. Bowling began to masturbate and

2

ejaculated on H.W.'s stomach and face. At this point, H.W. heard her grandmother knocking on the door. Waugh and Bowling told H.W. "to shut the f--- up and don't say anything." H.W. tried to scream, but she could not make a sound.

The next morning, H.W. awoke naked under a comforter on the couch. Bowling asked her if she remembered anything from the night before. H.W. told him that she did not remember anything. Bowling told her they had a threesome and that H.W. wanted it. H.W. gradually remembered the events of the night before and asked Waugh to not let anything like that happen to her again. Waugh told H.W. they would never make her do anything that she did not want to do.

H.W. continued to spend time with Waugh and Bowling in the garage. She tried to protect herself by placing trust in her mother and by cutting down on her intake of drugs and alcohol. On a second occasion, Bowling repeatedly tried to touch H.W. and tried to put his penis in her mouth. H.W. told Bowling to stop, but he continued. H.W. then tried to kick him off her and asked Waugh to help her. A heavily intoxicated Waugh responded by telling H.W. to "just f--- him, [H.]. I can't do it. Just f--- him."

On the third occasion, H.W. was with Waugh and Bowling in the garage. Waugh was heavily intoxicated. Bowling repeatedly touched H.W.'s breasts and buttocks through her clothing. He hugged her and tried to unhook her bra. Waugh again told H.W. to "just f--- him." Bowling and Waugh began

3

fighting. When H.W. tried to calm Waugh down, Waugh bit H.W. on the thigh with such force that it left a bruise.

Several days later, H.W. became distraught at school and could not stop crying. She told her teacher what had happened. The teacher informed the school counselor who then contacted the authorities. During the investigation, H.W. told the social workers about another incident where Bowling took a photograph of Waugh and H.W. with their breasts bared because he wanted to compare their breast size. Bowling also sent H.W. a photograph of his penis.

A Greenup County grand jury indicated Waugh on one count of first-degree sodomy, one count of incest, one count of complicity to first-degree rape, three counts of unlawful transaction with a minor, two counts of complicity to first-degree sodomy, one count of complicity to attempted first-degree sodomy, one count of complicity to first-degree sexual abuse, and one count of fourth-degree assault. The grand jury issued a superseding indictment to charge one count of use of a minor in a sexual performance. Prior to trial, the Commonwealth dismissed the three counts of unlawful transaction with a minor.

Following a jury trial, Waugh was found guilty of all charges. The trial court entered a judgment of conviction in accordance with the jury's verdict and sentenced Waugh to a total of forty years' imprisonment. This appeal followed.

For her first contention of error, Waugh argues her convictions for complicity to first-degree sodomy and complicity to attempted first-degree

sodomy violated the prohibition on double jeopardy because the charges arose from the same incident. Waugh specifically argues Bowling's conduct constituted a single offense. She does not contend her own actions or omissions as an accomplice constituted a single course of conduct. Waugh concedes this argument was not properly preserved and requests palpable error review under RCr[2] 10.26.

Double jeopardy violations are subject to palpable error review. *Cardine v. Commonwealth*, 283 S.W.3d 641, 651 (Ky. 2009). This Court has long held convictions tainted by double jeopardy cannot stand. *Id.* A double jeopardy violation satisfies the palpable error rule because it necessarily requires a different result. *Id.* In other words, a conviction tainted by double jeopardy results in manifest injustice. *Id.*

The Double Jeopardy Clause contained in the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Similarly, Section 13 of the Kentucky Constitution ensures no person shall "be twice put in jeopardy of his life or limb" for the same offense. This Court applies the *Blockburger*[3] test to determine whether a double jeopardy violation has occurred. *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996). In *Blockburger*, the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test

---

[2] Kentucky Rules of Criminal Procedure.

[3] *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

5

to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. When read together, Section (1)(a) and (2) of KRS[4] 505.020 represent the codification of the *Blockburger* test. *Kiper v. Commonwealth*, 399 S.W.3d 736, 742 (Ky. 2012).

KRS 505.020(1) recognizes "[w]hen a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense." Under KRS 505.020(1)(c), a defendant may not be convicted of more than one offense when "[t]he offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses." Double jeopardy does not prohibit the prosecution and conviction of a defendant "upon multiple offenses arising out of a single course of conduct when the facts establish that two or more *separate and distinct* attacks occurred during the episode of criminal behavior." *Spicer v. Commonwealth*, 442 S.W.3d 26, 31 (Ky. 2014). To distinguish separate attacks during a single course of conduct, "there must have been a cognizable lapse in [the defendant's] course of conduct during which the defendant could have reflected upon his conduct, if only momentarily, and formed the intent to commit additional acts." *Id.* (citation omitted) (alteration in original).

---

[4] Kentucky Revised Statutes.

We conclude the completed offense of first-degree sodomy and the attempted offense of first-degree sodomy constituted separate and distinct criminal acts. H.W. testified:

> He [Bowling] would try to touch on me and stick his penis in my mouth when I would tell him to stop. And I would try to kick him off of me and I yelled for my mom who was sitting next to me on the couch and she yelled at him and told him to stop. . . . He just kept trying . . . and I was trying to get my mom to help me, but she looked at me and she told me, "just f--- him, [H.]. I can't do it. Just f--- him."

H.W. verbally told Bowling to stop trying to put his penis in her mouth, but Bowling did not stop. H.W. subsequently tried to kick Bowling off her in an effort to stop him, but, again, he did not stop. H.W.'s separate verbal and physical actions in rebuffing Bowling provided a "cognizable lapse" that would have allowed Bowling to reflect upon his conduct and form the intent to commit additional criminal acts. From this evidence, the jury could reasonably infer that Bowling actually touched H.W.'s mouth with his penis and separately attempted, but failed, to make contact with H.W.'s mouth. Therefore, Waugh was not subjected to double jeopardy.

For her second contention of error, Waugh argues she was entitled to a directed verdict of acquittal on the charge of complicity to first-degree sodomy because there was insufficient evidence Bowling committed first-degree sodomy. Specifically, Waugh argues there was insufficient evidence Bowling placed his penis in H.W.'s mouth. We disagree. Again, Waugh does not contend the evidence of her own actions or omissions failed to establish complicity.

7

This allegation of error was not properly preserved for review. At the close of the Commonwealth's case-in-chief, Waugh moved for a direct verdict "on the grounds that it would be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." The trial court denied the motion. Although Waugh did not present any evidence, Waugh subsequently renewed her motion for directed verdict and objected to the giving of jury instructions. Again, Waugh did not offer any specific basis for the renewed motion. A generalized motion for a directed verdict is not sufficient to preserve the issue of sufficiency of the evidence for appellate review. *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020). On a motion for directed verdict, a criminal defendant must "identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove." *Id.* Nevertheless, the failure to grant a direct verdict based on the insufficiency of evidence is subject to palpable error review because "it is clear that a different result would occur, since a defendant convicted on insufficient proof should be acquitted." *Commonwealth v. Goss*, 428 S.W.3d 619, 627 (Ky. 2014). A conviction based on insufficient evidence necessarily results in manifest injustice. *Id.* We will accordingly review for palpable error.

A trial court's failure to grant a directed verdict should not be reversed unless the appellate court determines "it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). When confronted with a motion for directed verdict, the trial court must assume the truth of the Commonwealth's evidence and "draw all fair and

reasonable inferences from the evidence in favor of the Commonwealth." *Id.* Direct evidence of guilt is not required to support a conviction. *Southworth v. Commonwealth*, 435 S.W.3d 32, 42 (Ky. 2014). A conviction may rest on purely circumstantial evidence if the Commonwealth can prove each of the elements of the offense beyond a reasonable doubt. *Id.* Similarly, the ability of a jury to draw a reasonable inference does not depend on the existence of direct evidence. *McGruder v. Commonwealth*, 487 S.W.3d 884, 890 (Ky. 2016). A reasonable inference arises from "a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven." *Id.* (quoting *Martin v. Commonwealth*, 13 S.W.3d 232, 253 (Ky. 1999)). Because a conviction may stand on circumstantial evidence, a reasonable inference may also be drawn from circumstantial evidence. *Id.*

A finding of guilt by complicity requires: "(1) proof of commission of an offense by another person and (2) proof of the defendant's participation in commission of that offense." *Parks v. Commonwealth*, 192 S.W.3d 318, 327 (Ky. 2006) (quoting Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 3–3(d)(2), at 117 (1998)). An accomplice "occupies the same status as one being guilty of the principal offense." *Id.* (quoting *Wilson v. Commonwealth*, 601 S.W.2d 280, 286 (Ky. 1980)). Therefore, "to convict a defendant of guilt by complicity, the jury must find beyond a reasonable doubt that the offense was, in fact, committed by the person being aided or abetted by the defendant." *Id.*

KRS 510.070 defines first-degree sodomy in pertinent part:

(1) A person is guilty of sodomy in the first degree when:

9

(a) He engages in deviate sexual intercourse with another person by forcible compulsion; or

(b) He engages in deviate sexual intercourse with another person who is incapable of consent because he:

    1. Is physically helpless;

"Deviate sexual intercourse" is defined as "any act of sexual gratification involving the sex organs of one person and the mouth . . . of another." KRS 510.010(1). Penetration of the mouth is not required to sustain a conviction for first-degree sodomy. *Bills v. Commonwealth*, 851 S.W.2d 466, 470 (Ky. 1993). Mere contact between the penis of one person and the mouth of another, for the purpose of sexual gratification, is all that is necessary under the statute. *Id.* Further, this Court has previously held "the only possible inference" to be drawn from a victim's testimony that the defendant "tried to put his penis in her mouth" was that the defendant's "penis came in contact with her mouth." *Watson v. Commonwealth*, No. 2005–SC–000727–MR, 2006 WL 3386620 at *3 (Ky. November 22, 2006).

As stated above, H.W. testified that Bowling repeatedly tried to place his penis in her mouth despite her verbal and physical protests. H.W. testified that she tried to get Bowling "off of" her. Assuming the truth of this evidence and drawing all fair inferences therefrom in the Commonwealth's favor, we conclude a jury could reasonably find, beyond a reasonable doubt, that Bowling's penis made contact with H.W.'s mouth for the purpose of Bowling's sexual gratification. The jury was not required to find that Bowling's penis penetrated H.W.'s mouth. We note the jury was instructed that it must find

10

that "Kevin Bowling engaged in deviate sexual intercourse with the child, H.W. by placing his penis in the child H.W.'s mouth." However, "jury instruction issues and directed verdict issues are distinct for purposes of appeal." *Sutton v. Commonwealth*, 627 S.W.3d 836, 847 (Ky. 2021). The issue of whether a defendant is entitled to a directed verdict depends on the evidence presented at trial. *Id.* Therefore, the trial court properly denied Waugh's motion for directed verdict on the charge of complicity to first-degree sodomy.

For her third and final contention of error, Waugh argues the trial court erred by allowing the Commonwealth to interpret the contents of a recorded telephone call between Waugh and her mother. We disagree.

Like any evidentiary ruling, the admission of audio recordings is committed to the sound discretion of the trial court. *Johnson v. Commonwealth*, 90 S.W.3d 39, 45 (Ky. 2002), *overruled on other grounds by McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010). However, a trial court should not allow parties to interpret inaudible portions of recordings. *Sanborn v. Commonwealth*, 754 S.W.2d 534, 540 (Ky. 1988). It is an abuse of discretion for a "court to provide the jury with the prosecutor's version of the inaudible or indistinct portions." *Id.* The purpose of the rule is that the interpretation of a recording invades the jury's role "to determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness." *Gordon v. Commonwealth*, 916 S.W.2d 176, 180 (Ky. 1995). Recently, this Court held that it was error to allow the Commonwealth to project a self-produced transcript before the jury while a recording of a jail

11

house phone call was being played. *Taylor v. Commonwealth*, 611 S.W.3d 730, 744 (Ky. 2020). We explained "an attorney is not allowed to present a self-transcribed summary of what he thinks is being said on a phone call or recording" because "[t]his misleads the jury to hear the specific interpretation of one party." *Id.* This type of evidentiary error is subject to harmless error analysis. *Id.* at 745.

The Commonwealth played recordings of phone calls Waugh made to her mother, Gayle Waugh, from jail. The Commonwealth called Stacia Moreland to identify the voices on the recording. Waugh neither objected to the admission of the recordings nor to Moreland's competency to identify the voices contained therein. The Commonwealth repeatedly stopped the recording and asked Moreland to identify whether Waugh's voice or her mother's voice was being heard. The Commonwealth continued this line of questioning as follows:

> **Commonwealth**: And whose voice said, "deleted all that stuff off the phone?"
>
> **Moreland**: Angela Waugh.
>
> [Recording plays and then is stopped].
>
> **Commonwealth**: Who said, "This is for me, it isn't for anyone else?"
>
> **Moreland**: Angela Waugh.
>
> **Commonwealth**: And who said, "she needed to stay away from the courthouse," who's voice was that?
>
> **Moreland**: Angela Waugh.
>
> **Defense Counsel**: Objection. That's leading, the tape says what it says. Ms. Malone can't go back and read it again.

12

**Trial Court**:  Well, she's getting her to identify who said what statement, so that's overruled.

**Defense Counsel**:  She can ask her whose voices those are, but she can't read back a transcript.

**Trial Court**:  She can ask her, who said what piece.  So, overruled.  Go ahead.

**Commonwealth**:  Whose voice said, "she shouldn't have been out there, period."?

**Defense Counsel**:  Objection.

**Trial Court**:  Overruled.

**Moreland**:  Angela Waugh.

**Commonwealth**:  And who was the other voice on the phone?

**Moreland**:  Gayle Waugh.

**Commonwealth**:  Whose voice said, "I need you to be straight with her.  I need her one f'ing time."?

**Moreland**:  Angela Waugh.

**Commonwealth**:  And any other voices on that phone call?

**Moreland**:  Gayle Waugh.

[Recording plays and is stopped].

**Commonwealth**:  Whose voice says, "I will never forgive [H.] for this one."?

**Moreland**:  Angela Waugh.

**Defense Counsel**:  Objection.

**Trial Court**:  Mr. Lyon, I've ruled on these, she can do that.  That's the only way to identify who said which thing, so I've noted your objection, they're overruled.

[Recording plays and is stopped].

**Commonwealth**:  And who said, "I'll never forgive her for this."?  Whose voice was that?

**Moreland**:  Angela Waugh.

[Recording plays and is stopped].

**Commonwealth**:  And who said to "keep her away from the courthouse, just don't let her testify about s---."?

**Moreland**:  Angela Waugh.

The situation in the present appeal is distinguishable from *Taylor* and *Sanborn*.  There is no allegation that the recording of the telephone call between Waugh and her mother was inaudible or difficult to understand.  Additionally, there is no allegation that the prosecutor misstated or otherwise mischaracterized the contents of the recording.  The Commonwealth did not self-produce a written transcription for the jury.  Instead, the Commonwealth orally repeated statements that were clearly audible on the recording.  The purpose of the repetition was not to interpret the content of the statement, but to identify the voice of the speaker.  It is permissible for a court to allow the jury to use a transcript to follow a recording "in order to delineate the voices of the speakers."  *Norton v. Commonwealth*, 890 S.W.2d 632, 637 (Ky. App. 1994) (citing *United States v. Keck*, 773 F.2d 759 (7th Cir. 1985); *United States v. Watson*, 594 F.2d 1330 (10th Cir. 1979); *United States v. Wilson*, 578 F.2d 67 (5th Cir. 1978)).

We cannot conclude the oral repetition of clearly audible statements constituted an impermissible interpretation of the recording.  Even assuming the Commonwealth's questioning crossed the line into impermissible

14

interpretation, we would nevertheless find any error to be harmless beyond a reasonable doubt. The subject-matter of the recordings involved Waugh's state of mind and consciousness of guilt following the incidents in question. The recordings did not provide any evidence of the elements of any of the charged offenses. We are convinced the jury would have convicted Waugh on all charges regardless of whether the Commonwealth's repetition of Waugh's recorded statements had not been permitted.

For the foregoing reasons and discerning no error, the judgment of the Greenup Circuit Court is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert, Nickell, JJ., concur. Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Roy A. Durham, II
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General